## Polk *v.* Afflick.

### Opinion delivered May 18, 1925.

1. Judicial sales—opening sale for increased bid.—Judicial sales will not be opened because bids for a greater amount are offered for the property when the report of sale is presented for confirmation.

2. Judicial sales—reservation of right to reject bids.—Reservation, in a degree ordering a sale by a receiver of property, of the right to reject all bids offered at most authorizes the receiver to reject the bids at the time of sale, but does not authorize the

court to reject the highest bid reported by the receiver and to accept a subsequent higher bid of another.

3. RECEIVERS—ARM OF COURT.—A receiver in selling property ordered to be sold is the arm of the court.

4. RECEIVERS—EFFECT OF ACCEPTANCE OF BID.—On receivers acceptance of the highest bid at a judicial sale, the person so bidding becomes the purchaser, acquiring vested rights as such.

5. JUDICIAL SALES—OPENING SALE FOR INCREASED BID.—Where a receiver reported a sale to the highest bidder for confirmation, the court had no authority to set it aside and let in a subsequent higher bidder, in the absence of a showing of the inadequacy of the first bid, coupled with fraud or other element rendering it inequitable to confirm the sale to him.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; reversed.

STATEMENT OF FACTS.

E. M. Polk prosecutes this appeal to reverse an order of the chancery court rejecting and setting aside his bid for certain real estate sold at a receiver's sale.

It appears from the record that the stockholders and creditors of the West Helena Consolidated Company, a corporation, brought a suit in the chancery court against it for the purpose of winding up its affairs as an insolvent corporation. A receiver was duly appointed by the chancery court to take charge of the assets of said corporation and to wind up its affairs. The corporation was duly adjudged to be insolvent, and the receiver was ordered to sell the property in his hands at public sale, upon the express condition that the property as a whole could be sold for an amount sufficient to discharge all of the indebtedness of said corporation.

The first sale was set aside and held for naught. A supplemental decree was then made, in which the property of the corporation was again ordered to be sold by the receiver. It was decreed that the property should be sold in the following order:

"First: The waterworks, all appliances, equipment, pipe, franchises, and real estate upon which said waterworks is situated.

"Second: The street railway, including all rolling stock, right-of-way, franchises, poles, wires, buildings, machinery, appliances, and equipment used in the operation of said railway.

"Third: All the unplatted real estate belonging to the West Helena Consolidated Company, consisting of approximately 1,800 acres of land.

"Fourth: All lots and blocks situated in the city of West Helena, Arkansas.

"Fifth: All notes, book accounts, choses in action, including equity of redemption and all collateral of every kind, character and nature possessed, held and owned by the said corporation.

"It is further provided that, after the said properties had been offered in unit as above provided, the receiver shall be required to offer all of said property for sale as a whole."

The sale was ordered to be made partly for cash and partly on a credit, with security to be approved by the receiver. The decree also contained the following provision: "The court reserves the right to reject any and all bids offered at said sale." The receiver was further directed to make a report of his sale at an adjourned day of the chancery court.

On November 26, 1923, the receiver filed his report of sale. The report shows that Edwin Bevens became the purchaser of the West Helena Consolidated Waterworks; that the Home Mutual Building & Loan Association became the purchaser of the interurban railway system; that Fannie M. Hornor became the purchaser of the property that had been mortgaged to her; that J. T. Hornor, trustee, became the purchaser of certain property mortgaged to him; that E. M. Polk became the purchaser of the equity in a certain town lot for the sum of $525; that E. M. Polk became the purchaser of the lots and blocks in the city of West Helena, Arkansas, for the sum of $3,250; that John I. Moore became the purchaser of the notes and book accounts; and that 1,800 acres of unplatted real

estate belonging to said corporation remained unsold on account of no one having bid for it.

Before the consideration of the receiver's report by the court, C. W. Afflick filed his bid in the sum of $5,000 for all of said property except the street railway property, the waterworks, accounts and notes, and the cash in the possession of the receiver. Upon the consideration of the report of the receiver, the bids of E. M. Polk, Fannie M. Hornor, and J. T. Hornor, for property as above set forth, were rejected, and the bid of C. W. Afflick therefor was received and accepted by the court. The report of sale as thus amended was confirmed by the court, and C. W. Afflick was declared to be the purchaser of the property which had been struck off, respectively, to E. M. Polk, Fannie M. Hornor and J. T. Hornor, as the highest bidders therefor at the receiver's sale.

From the decree confirming the sale upon the offer of C. W. Afflick, E. M. Polk has duly prosecuted an appeal to this court.

*P. R. Andrews*, for appellant.

*W. R. Satterfield* and *J. G. Burke*, for appellee.

HART, J., (after stating the facts). The sole question raised by this appeal is whether or not the chancery court erred in setting aside the sale by the receiver to E. M. Polk for certain property belonging to the insolvent corporation and accepting the increased offer by C. W. Afflick for said property.

The record shows that E. M. Polk bid $3,250 for certain vacant lots in West Helena and $525 for the equity in a certain house and lot in West Helena. This property was struck off to him by the receiver, and E. M. Polk complied with the terms of sale by depositing a certified check for $500 with the receiver and securing the deferred payments on said property. The 1,800 acres of rural land was offered for sale, and no one bid therefor. When the report of sale was presented to the court for confirmation, C. W. Afflick offered $5,000 for the property purchased by

Polk and for the rural land. His bid was accepted by the court, and the sale to Polk was set aside.

Under these facts the court erred in setting aside the sale to E. M. Polk. The value of the farm land, which was not sold at the receiver's sale, is not shown; and there is nothing in the record from which to infer that the sum bid by Polk for the property struck off to him by the receiver was inadequate. Even if this be true, the mere fact that Afflick made an advance bid for the property would not be sufficient.

The English practice treats the bidder at chancery sales in the light of one who has made an offer to be reported to the court, and, if a larger offer is made by another, the sale to the former is not confirmed. The practice of the English court of chancery in opening sales whenever an offer of a larger sum for the property is made has never been adopted in this State. *Penn's Adm'r* v. *Tolleson*, 20 Ark. 652.

There is a uniform current of decisions in this State settling that judicial sales will not be opened because bids for a greater amount are offered for the property when the report of sale is presented for confirmation. *George* v. *Norwood*, 77 Ark. 216; *Brasch* v. *Mumey*, 99 Ark. 324; *Miller* v. *Henry*, 105 Ark. 261; *Wells* v. *Lenox*, 108 Ark. 366; and *Stevenson* v. *Gault*, 131 Ark. 397.

This principle is necessary to maintain the stability of judicial sales. In order to preserve the public confidence in the entire fairness of such sales, it has always been declared to be within the judicial discretion of chancery courts in this State to set aside such sales, where there is inadequacy of price coupled with fraud, or any other element which would amount to unfairness and render it inequitable to confirm the sale. As we have already seen, none of these reasons for setting aside the sale made by the receiver exists in the present case.

But it is claimed that the right existed because the order of sale contains the following: "The court reserves the right to reject any and all bids offered at said sale."

In the first place, if this clause be given the broad signification claimed by counsel for appellee, it would not have given the court the right, under the authorities cited, to have set aside the sale to Polk and accepted the bid at the time made by Afflick. At most, it could have only given the court the right to have rejected the bid of Polk.

Under the principles of law above cited, this language could not have any greater signification than to authorize the receiver to have rejected bids made at the time of sale. The receiver was the arm of the court, and, after he accepted the highest bid made at the sale, such bidder became the purchaser, and, as such purchaser, acquired vested rights. He could be required to specifically perform his contract, and he acquired the corresponding right to appear and claim at the hands of the court his rights as a purchaser at the sale.

It follows that the chancellor erred in setting aside the sale to E. M. Polk, and, for that error, the decree must be reversed, and the cause will be remanded for further proceedings in accordance with the principles of equity and not inconsistent with this opinion.