FORDYCE *v.* HAMPTON.

Opinion delivered June 3, 1929.

 

*J. T. Richardson,* for appellant.

*S. F. Morton,* for appellee.

McHANEY, J. This case was submitted to the chancery court on an agreed statement of facts, substantially as follows:

In 1882 the Southwestern Improvement Association, being the owner of a certain tract of land, platted same into lots and blocks, streets and alleys, as the town of Fordyce. The plat thereof was probably filed with the recorder of Dallas County, but, not being acknowledged, was not placed of record, and no bill of assurance or deed of conveyance of streets and alleys was made to the town. Conveyances of said platted property, however, were made by it with reference to said plat. It conveyed lots 2, 3, 4, 5, 6, 7 and 8, in block 1 of the town of Fordyce, according to said plat, to J. E. Hampton, on December 19, 1885, by deed, which was duly acknowledged, filed and recorded. In 1886 Mr. Hampton built a residence on lots 4 and 5 in said block 1, and inclosed all of the lots with a fence, including the alley, as shown on the plat, and thereafter occupied all of said land as a home; "that he continued in open, actual, notorious, distinct and exclusive, peaceable and undisturbed possession of said alley between lots 2, 3, 4 and 5, and lots 6, 7 and 8, under a claim of title from that time until his death, which occurred on the 21st day of July, 1922."

On July 15, 1895, J. E. Hampton and the appellee, his wife, conveyed by warranty deed lots 6, 7 and 8, in block 1, according to said plat, to their son, J. E. Hampton, Jr.; that in said deed he did not convey to his son any portion of the alley, but that a fence was erected by Mr. Hampton, Sr., separating the lots he had sold his son from the alley and the other lots which he re-

tained, thereby keeping the alley inclosed under a fence with that surrounding lots 2, 3, 4 and 5. .Lots 2, 3, 4 and 5 front in an easterly direction on Chief Street, and lots 6, 7 and 8 front in a westerly direction on East First Street, the alley in question lying between, and being inclosed at the north end, on account of the property to the north not being platted. Since the date of Mr. Hampton's purchase, the property to the north has been platted, and the alley, as shown on the plat, if opened, would enter a street. In 1904 the Southwestern Improvement Association executed a deed of conveyance to the town of Fordyce, in trust for the public, to all the lands included in the streets and alleys shown, laid off and marked on a plat, which was filed at the same time, and which is identical with the original plat, dedicating the same to the public use. In that deed of conveyance there was a clause providing that, when any street or alley shall cease to be used as such, then the same should revert to and become the property of the grantor. In 1907 the town of Fordyce was raised to a city of the second class.

Mr. J. E. Hampton, Sr., at his death in 1922, left a last will and testament, by which he devised lots 2, 3, 4 and 5, in block 1, city of Fordyce, and all that part of the alley extending through said block 1 which lies adjacent to said lots, to the appellee, who is his widow. This will was shortly thereafter admitted to probate, and is now of record in Dallas County.

On December 29, 1927, the appellee executed and delivered her deed of conveyance to lots 2, 3, 4 and 5, in block 1, in the city of Fordyce, to appellants, Robertson and Elliott, in which no mention was made of the alley, nor that it was made according to said plat; but appellee says it was not her intention to sell or convey to appellants any portion of said alley, while appellants say that they intended to buy, and supposed that said conveyance included, the west one-half of said alley adjoining said lots, subject to an easement of the city of

Fordyce, for the use of said land as a public alley, but nothing was said by either party in the negotiations for the sale and purchase of said lots with reference to the alley. Appellants are still the owners of the land conveyed by said deed.

It was further agreed that the appellee and her husband, from whom she derived title, "have been in the actual, open, notorious, distinct and exclusive, peaceable and undisturbed possession of said tract of land embraced in said alley, under claim of title, ever since the same was inclosed by the said J. E. Hampton, and that said alley has continuously been inclosed with a fence" up to the time she conveyed to appellants; that, immediately after the purchase by appellants of the property, they erected a garage and filling station thereon, tore down the fence on the north, west and south sides of said lots and at the south end of said alley, and left standing the fence at the other end of said alley; that, after the building was erected, appellants began to use said alley on the east of said lots, and defendant immediately protested, but, when they continued to use the alley, she again inclosed it by setting up a row of posts on the west and south sides thereof, and connected the posts by chains. But it is agreed that the acts of user on the part of appellants were not sufficient to interrupt the running of the statute of limitations.

It was further agreed that there were no reservations or exceptions in the deed from the Southwestern Improvement Association to J. E. Hampton, or in the deed from Hampton and wife to their son, or in the deed of appellee to appellants, and no mention is made in any of said deeds of said alley; that it would be to the special interest and benefit of appellants and for the convenience of the public that said alley be opened; that the alley has never been separately assessed for taxation.

Appellants thereafter brought this action, in which the city of Fordyce joined, for a mandatory injunction requiring appellee to remove said obstruction from said alley, and for a restraining order permanently enjoining her from further obstructing said alley or interfering with the plaintiffs and the public in use of same.

The court found the issues in favor of the appellee, and dismissed the complaint for want of equity.

Up until the passage of the act of May 28, 1907, Acts 1907, p. 1147, which provided that thereafter no person could acquire title or right of possession to any alley, street or public park, or any portion thereof, in any city or incorporated town in this State, by adverse possession or adverse occupancy, this court had many times held that title by adverse possession could be acquired as against such municipal corporations to streets and alleys.

In *Fort Smith* v. *McKibbin,* 41 Ark. 45, it was held that municipal corporations are bound in like manner as individuals by the statute of limitations; and that adverse possession of an alley in a city for the statutory period will give title to the occupant, and bar the city. See also *Helena* v. *Hornor,* 58 Ark. 151, 23 S. W. 966; *Mebane* v. *Wynne,* 127 Ark. 364, 192 S. W. 221; *Gathright* v. *State,* 129 Ark. 339, 195 S. W. 1069; *Little Rock* v. *Jeuryens,* 133 Ark. 126, 202 S. W. 45; *Madison* v. *Bond,* 133 Ark. 527, 202 S. W. 721; and *Little Rock* v. *Galloway,* 162 Ark. 329, 258 S. W. 356.

The act of March 21, 1885, Acts 1885, p. 92, exempting cities from the statutes of limitations as to streets and other public places, applied only to cities of the first class. Section 7570, C. & M. Digest, applies to all municipalities. The possession therefore by Mr. Hampton of the alley in question, as set forth in the agreed statement of facts, constituted adverse possession, and the seven-year statute of limitations precluded the city of Fordyce from maintaining this action to compel the opening of the alley, as his possession had ripened

into title many years prior to the act of May 28, 1907, above referred to.

The next question we are called upon to determine is, did the conveyance by the appellee of lots 2, 3, 4 and 5, in block 1, town of Fordyce, convey any interest in the alley to the appellants, Robertson and Elliott? It is the contention of appellants that, conceding that appellee had acquired title to the alley by adverse possession of herself and her grantor, her conveyance of the lots to appellants, Robertson and Elliott, without specifically excepting the alley, carried the title to them to the median line thereof, even though it had long since ceased to be an alley, was never anything more than a paper alley, and never having been used as such. Appellants rely principally upon the decisions of this court in *Dickinson* v. *Arkansas City Improvement Co.,* 77 Ark. 570, 92 S. W. 21, 113 Am. St. Rep. 170, and *Matthews* v. *Bloodworth,* 111 Ark. 545, 165 S. W. 263. These cases and others cited are not in point. It is true that it is well settled in this State that a conveyance of land by lots and blocks carries the fee to the middle of the existing streets and alleys on which they abut, subject to the right of the public to use the same as highways, provided there are no specific words describing the property evidencing a different intent. But this rule applies only to existing streets and alleys at the time of a conveyance. When Mr. Hampton acquired this property, in 1885, there was an alley shown on the plat of the property, as heretofore stated. He immediately inclosed it, acquiring title to it by adverse possession, and never, since the platting of the addition, has the alley been used as such by the public. It became his property the same as if he had bought it and paid for it. The alley as shown on the plat, after the lapse of seven years from its inclosure by Mr. Hampton, ceased to be and exist as an alley in fact, but it was a separate piece of property owned by Mr. Hampton, in addition to the lots he had purchased from the Southwestern Improvement Association. At the time Mrs. Hampton sold

to the appellants there was no alley in fact, and they were put on notice of its private ownership, because in his will, which was duly probated, he specifically gave the strip of land, 20x200 feet, shown on the plat as an alley, to Mrs. Hampton, showing that at that time he regarded it as his property, and not as a public way. Therefore when Mrs. Hampton conveyed, describing the property as lots 2, 3, 4 and 5, in block 1, appellants acquired only the area covered by those lots, and acquired no interest in an adjacent piece of property which Mrs. Hampton's grantor had acquired by adverse possession.

We do not find that this court has heretofore decided the exact question now before us, and the diligence of counsel has not cited any such case of our own. The courts of other States appear to be divided on the question, but we think the weight of authority, as well as the better reasoning, is in accord with the views herein expressed. Thus, in *Sanchez* v. *Grace M. E. Church*, 114 Cal. 295, 46 Pac. 2, the court said:

"The conveyance of land bounded by a highway is presumed to carry title to the median line of the way, but there is no reason in a like presumption to include land which has formed, but forms no longer, part of a highway; * * * there is therefore no more reason to say that any part thereof passed under the designation of those lots in the deed, than for extending the scope of that description to adjacent land—if such there had been—which never was impressed with the highway use; more especially since neither party claims that plaintiff owned the fee in any part of said land before its vacation as a highway."

In *White* v. *Jefferson*, 110 Minn. 276, 124 N. W. 373, the court used this language:

"Where, however, the street has been vacated while the original proprietor owns the lots in question, the situation is substantially different. On vacation of a street in a case like the one at bar, he owns lots 23 and 24 and the space between in fee simple. He can transfer the whole tract, or any part of it, or transfer lot 23 to any

712

person, and lot 24 to another person, and the space between the two to a third person. It is immaterial in what order of time such transfers were made. If the strip was granted before the lots, the intention would be certain; if afterwards, equally clear. What had been a street would be mere land. It would be taxable as land, and so descend. Its transfer would be subject to the appropriate section of the statute of frauds. That it was not numbered nor properly named on the plat would be wholly insignificant. The case would be the same as if no street had ever existed, and, instead of being designated as 'street,' the tract had been marked 'sand hole,' or 'mound,' or any other name, or had had no name. The land which had been a street assumed exactly the same legal status as any other land which had not been impressed with a public easement.''

There is a note to the case of *White* v. *Jefferson*, in 110 Minn. 276, 124 N. W. 373, 32 L. R. A. (N. S.) 778, discussing a long list of cases supporting the doctrine announced in the named case, and the commentator says that the rule announced therein finds ample support among the authorities. We therefore hold, as did the learned chancellor who tried this case, that the complaint was without equity.

Affirmed.