McGee *v.* Swearengen.

4-4757

Opinion delivered October 25, 1937.

736

*R. V. Wheeler* and *John A. Fogleman,* for appellants.
*A. B. Shafer* and *E. C. Gathings,* for appellee.

GRIFFIN SMITH, C. J. This appeal questions the correctness of a judgment of the Crittenden circuit court which awarded a writ of ejectment, the effect of which was to take from the possession of appellants, defendants below, a certain tract of land.

Prior to April 24, 1926, [and presumably prior to 1915, although on this point the agreed statement of facts upon which the cause was tried by the court sitting as a jury is not clear] the southeast quarter of section 12, township 6 north, range 8 east, was owned by Norman Monaghan, trustee. State highway No. 70 running westward from its point of intersection with Highway No. 61 in West Memphis is coincident on the south with the south line of section 12. In 1915, Drainage District No.

6 of Crittenden county was created, whereby a strip of land 45.8 feet wide immediately north of and paralleling highway 70 was acquired for public use in connection with the drainage project.

On April 24, 1926, Monaghan conveyed to appellant McGee a certain lot in the southeast quarter of section 12, the entire section having been previously platted as Compress Subdivision. In this plat highways 61 and 70 were shown. Block 18 is in the southeast corner of the subdivision, bounded on the east by highway 61. To the south Nance avenue is identified, and then, south, is the drainage canal, south of which is highway 70. Lot 8, the property conveyed to appellant McGee forms the southeast corner of block 18, and Monaghan's deed contained the following description: "A lot in the Compress Land Company's Subdivision of a part of the southeast quarter of section twelve, township six north, range eight east, as shown on the recorded plat of said subdivision particularly described as follows: Beginning at a point in the east line of lot eight, block eighteen of said subdivision one hundred feet south of the north line of said lot and running thence in a southerly direction along the east line of said lot eight one hundred and forty feet to a street; thence in a westerly direction along the north line of said street two hundred seven and seventy one-hundredth feet to the west line of said lot eight; thence north along the west line of lot eight, one hundred feet; thence in an easterly direction two hundred feet to the point of beginning; being all of said lot eight except one hundred feet in the form of a parallelogram off the north side thereof. This property is sold and conveyed subject to the restrictions that all improvements erected thereon must be set back forty feet from the east line thereof."

On April 21, 1930, Monaghan executed in favor of W. A. Doyle a deed conveying the following: "A certain tract of land in the southeast quarter of section twelve, township six north, range eight east, as shown on the plat of the Compress Subdivision, recorded in the office of the clerk of Crittenden county, state of Arkansas, par-

ticularly described as follows: Beginning at the point which is the intersection of the south, or southwest line of Nance avenue with the westwardly line of Route 61; running thence in a southerly direction along the north line of Route 70; running thence westwardly along the north line of Route 70 two hundred feet; running thence north to the south line of Nance avenue; running thence eastwardly along the south line of Nance avenue to the point of beginning.''

Subsequent to this conveyance, Doyle procured permission in writing from the commissioners of Drainage District No. 6 to erect a building over the property conveyed to him, such permission having been coupled with a stipulation that flowage through the canal should not be interfered with.

In 1935, the limits of the city of West Memphis were extended westward from the right-of-way of highway 61 a distance of 200 feet from the eastern line of section 12, and the Crittenden county court ceded to the city of West Memphis all of section 12. Nance avenue was vacated as a public highway from its western terminus to the western limits of West Memphis, and Monaghan (January 7, 1935) quitclaimed unto the several property owners along the north side of Nance avenue, in proportion to their respective frontages, all of his interest ''to so much of Nance avenue as may be vacated and to my residuary interest in the right-of-way of the drainage ditch lying along the north side of highway No. 70 and between said highway and Nance avenue so that each of said property owners shall abut upon highway No. 70.''

Subsequent to the institution of the instant suit the city of West Memphis, with consent of the parties hereto, vacated that part of Nance avenue lying within the corporation limits, including the area south of lot 8 in block 18.

Whatever interest W. A. Doyle may have had in the property in question went to appellee as devisee under the will of said Doyle. The appellant Perkins is a tenant of appellant McGee.

The contention of the appellants as expressed in their brief, is that, since the south boundary of the property specifically described in the deed to Letitia V. McGee is separated from the south boundary of section 12 only by the right-of-way of Nance avenue, the right-of-way of the drainage canal, and the right-of-way of highway No. 70, the conveyance included the reversionary interest in all the land occupied by the right-of-ways, and vested in appellant McGee, by operation of law, the fee simple title to the property in question, subject only to the rights of the public therein.

Appellee agrees to the issue, saying: ''Stated in another way, the question is: Does a deed bounded by the north boundary line of Nance avenue carry title across Nance avenue, the right-of-way of Drainage District No. 6, and to the middle thread of highway No. 70? The contention of appellee is that, in view of the fact that the tract conveyed to the appellant McGee is described by metes and bounds, her title extends no farther south than the north line of Nance avenue; or, if her deed be construed as bounding upon Nance avenue, her title extends no farther than the middle thread thereof.''

Appellants rely upon *Taylor* v. *Armstrong,* 24 Ark. 102. The facts in that case, briefly stated, are that certain lots fronting on Water street were conveyed by Gilmore to Taylor. Water street, dedicated to public use, extended in its width of 140 feet to the Arkansas river. Three years after execution of the conveyance to Taylor, Gilmore deeded in fee to Armstrong and Rye all of that portion of Water street between Main and Walnut, which included the area upon which Taylor's lots fronted. By the terms of the deed the grantees were to hold the legal title to the property, permitting use of the same as a public street. Subsequent to Gilmore's conveyance to Armstrong and Rye, Taylor constructed a warehouse on a portion of Water street on which the lots purchased by him of Gilmore fronted, and Taylor was in possession of the warehouse at the time a suit in ejectment was brought by Armstrong & Rye. The latter were successful in the lower court, but on appeal the

judgment was reversed. The court, after quoting from Kent (1 Com., vol. 3, p. 433), said:

"If a highway be laid out through the land of A, and he afterwards conveys the land upon one side of the highway to B, and the land upon the other side to C, without reservation, they become the owners of the fee in the soil of the highway equally, each owning to the center. So, if A and B, being the proprietors of adjoining tracts, contribute equal quantities of land to a highway, and afterwards convey their lands respectively, their grantees become the owners of the fee in the soil of the highway equally, each going to the center. But if a highway be laid off entirely upon the land of A, running along the margin of his tract, and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee. The same rules are applicable to streets in towns and cities.

"It was proven and admitted that Taylor was the owner of the lots, and the presumption follows, in the absence of proof to the contrary, that he was the owner of the fee in the soil of that portion of the street upon which the warehouse was situated; not only to the center of the street, but to the margin of the river, there being no opposite proprietor."

Appellants also cite *Johnson* v. *Grenell*, 188 N. Y. 407, 81 N. E. 161, 13 L. R. A. (N. S.) 551, and *Delachaise* v. *Maginnis,* 44 La. Ann. 1043, 11 So. 715. The effect of the Grenell case is to hold that an owner of a lot fronting on a street, which intervened between the lot and a river, owned the fee in and to the street, subject to the public easement. The court said:

"What the original deed of Mrs. Grenell intended to grant was to be ascertained from her map. It conveyed a piece of land known as lot No. 34 on the map, being on the southeast shore, with a road in front of it extending to the waters of the river. Had the grantor intended to reserve the land in the roadway, or any part of it, she could have done so; but there is an absence of any language from which such an intention could be implied. Indeed, there is no sufficient reason apparent to infer an

intention by the grantor, when parting with her title to the only land adjoining the road, to reserve any interest in the fee of the road itself. Manifestly, from the facts, an inducement to the purchaser of the lot was its being shown, and stated, to lie upon the shore of the island, and the enjoyment of the riparian advantages conferred a distinct value * * *. That Mrs. Grenell's grantees took by her deed, certainly, one-half of the road, was conceded; and, had she owned any land upon the other side of the road, the other adjoining half of the road would have remained hers.''

The Delachaise case held that where a party sold the entire estate owned by him upon a public road or street bordering on a river, and beyond which no property susceptible of private ownership existed at the time of the sale, the grantor retained nothing to which the accessory right of future alluvium could attach.

The Taylor-Armstrong case is cited in an opinion written by Mr. Justice BATTLE, *Packet Company* v. *Sorrels,* 50 Ark. 466, 8 S. W. 683, where the rule announced by Kent is quoted and adopted. ''It follows, then,'' says the opinion, ''that land dedicated by the owner as a street to the use of the public cannot lawfully be used for any other purpose; and that if lots bounded by it have been conveyed by such owner, without reservation of the fee in the street, the right to the use and possession of the one-half of the street adjoining such lots would pass to the person owning the lots, when the right to use the same as a street ceased to exist; and that the authorities of the town or city in which the same is situated cannot lawfully appropriate or divert it to uses and purposes foreign to those for which it was dedicated; nor is it within the power of the legislature to authorize a disposal or diversion of it to uses foreign to the dedication.'' See, also, *Kilgo* v. *Cook,* 174 Ark. 432, 295 S. W. 355.

In *Fordyce* v. *Hampton,* 179 Ark. 705, 17 S. W. (2d) 869, we said: ''It is true that it is well settled in this state that a conveyance of land by lots and blocks carries the fee to the middle of the existing streets and alleys

on which they abut, subject to the right of the public to use the same as highways, provided there are no specific words describing the property evidencing a different intent. But this rule applies only to existing streets and alleys at the time of a conveyance.''

*Corpus Juris,* vol. 9, § 88, p. 199, lays down the following rule: ''Where a conveyance of land bounded by a street or highway makes use of the expression 'bounded by,' 'on,' 'upon,' or 'along' such street or highway, it is very generally held to indicate an intention to convey to the center thereof.''

We find no Arkansas decisions adjudicating a controversy analogous to the instant case, but the principles quoted, *supra,* point to the following conclusions:

(1) When a part of Monaghan's land was taken for drainage purposes in 1915, the fee remained in the original owner, and this is true whether the easement was acquired by condemnation or purchase, in the absence of language in the deed (if acquired by purchase) showing an intent to convey a fee. There is no such showing here.

(2) Having retained such fee, Monaghan, for all purposes not inconsistent with the public right of user, remained the owner of that portion of the drainage ditch acquired through him, and he had a right to sell, or lease, or deal with it in any legal manner he saw fit, subject to the public restrictions.

(3) The same rule applies to his fee in that portion of highway 70 acquired through him, except that his fee extends only to the center of the right-of-way, unless it should be shown that he owned the property south of such highway. In that event his fee would include all of the area of the highway abutting upon his property on both sides.

(4) Since the drainage district had been created prior to the time Monaghan plotted the block and lots in section 12 and dedicated the streets and alleys, inclusive of Nance avenue, and no words appearing in the dedication of Nance avenue evidencing an intent to extend its area south of the 40 feet shown by the plat, it

will not be presumed that any part of the drainage property was included in the grant, nor did Monaghan's reserved fee in the drainage tract, by operation of law, attach to and become a part of Nance avenue to such an extent that a conveyance of the fee to lot 8 in block 12 (lying immediately north of Nance avenue) would vest in the grantee any rights in the fee of the drainage district property.

(5) When, in 1926, the appellant McGee purchased lot 8, so situated, and so described in the deed by specific measurements, projecting appellant's south line to the north line of Nance avenue, she nevertheless acquired a fee to the center of Nance avenue. This, for the reason that there were no expressions showing an intent to limit the grant in a manner contrary to the general rule of construction. It is true that the deed recites "A lot in the Compress Land Company's Subdivision of a part of the southeast quarter of section 12," etc., and it is urged by appellee that the word "part" evidenced an intention upon the part of the grantor that the southern boundary should be definitely fixed at the point reached by the specific measurement. However, it is our view that the expression "a part" has reference to the fact that the Compress Company's Subdivision was a part of section 12, and does not mean that only a part of the lot was conveyed.

(6) In the view that we have taken, Monaghan's quit-claim deed of January 7, 1935, has no bearing on the case, appellee's rights having attached prior to its execution.

We hold, therefore, that appellant's south line is the center of Nance avenue, and that appellee retained the fee to the drainage district land, subject to its public attributes; and that appellee's fee in Nance avenue, incidental to his fee in the drainage district lands, extends northward to the center of Nance avenue to the point where it meets the fee of appellant McGee.

The judgment of the circuit court is modified to conform to this opinion, and, as thus modified, it is affirmed.