## Fayette County v. Morton et al.

March 22, 1940.

King Swope, Judge.

R. P. Moloney for appellant.

M. Don Forman, W. E. Darragh, S. Jewell Rice and Harry G. Black for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

Title to a strip of land formerly occupied by an interurban electric railway is involved. The question is, where was the destination of the remainder in reversion retained in the conveyance of the easement. The property is on the east side of the Lexington and Nicholasville road (now U. S. Highway No. 27), a mile or so south of Lexington.

On April 19, 1909, L. C. Price and others conveyed a strip of land 25 feet wide and about a half mile long to the Central Kentucky Traction Company as a right of way. The deed contains the following provision:

"To Have And To Hold the aforesaid property

unto the party of the second part, its successors and assigns, forever, for the purposes above designated as a right-of-way for said electric railway, and the parties of the first part covenant to Warrant Generally the property hereby conveyed. But it is distinctly provided and understood that if said strip of land be abandoned for the uses of an electric railroad, or if it shall permanently cease to be used for said purpose, then all of said property shall in that event revert and belong in fee simple to said first parties, or to their respective heirs, and assigns, the owners of the adjoining property, as if this deed had never been made.''

About ten years thereafter, Price's heirs conveyed a parcel of 11½ acres which embraced a part of this right of way, specifically referred to, to J. Waller Rodes. The west boundary was the center of the road. Title to this tract passed by mesne conveyances to W. L. Bain, then to Hay Hardware Company, and then to J. S. Morton on June 15, 1927. It is stipulated that Morton laid off the tract, excepting the railway right of way, into streets and lots according to a plat which was duly recorded in the office of the clerk of the Fayette County Court, and a copy of which is filed in this record. At that time the railway was being operated. In doing this Morton dedicated a street called ''Hiltonia Drive,'' parallel with and contiguous to the east side of the railway right of way, together with an outlet or extension of an intersecting street across the railway, to the Nicholasville road. He then sold lots described as being bound on Hiltonia Drive and ''running back between parallel lines from the street.'' The dedicated street was accepted by Fayette county and has been maintained by it and used by the public since 1927. Thus there were three contiguous strips of land—the highway, the railway and the street—embraced within the 11½-acre tract. Morton, the remote grantee of the tract, never expressly parted with title to the remainder in reversion in the railway right of way—the strip with which we are presently concerned. The use and occupancy of this as a railway was definitely abandoned in 1935. In September, 1937, Morton executed a fee-simple deed to 485 feet of the right of way and of the 20-foot strip covered by the public highway to H. G. Black. He

built a gasoline filling station on the abandoned railway property.

Meanwhile, in 1935, all the owners of lots fronting on Hiltonia Drive and the successor in title of the Central Kentucky Traction Company conveyed all their right, title and interest in the abandoned right of way to Fayette County for the purpose of widening the Nicholasville road.

This suit was prosecuted by the county against Black and Morton to have it adjudged the owner of the strip of land and to have the defendants vacate the same. The circuit court adjudged Black to be the owner of and entitled to the possession of the tract, and dismissed the petition.

The county claims title upon two theories. One is that the provision for reverter contained in Price's conveyance of the right of way is void because within the statute against perpetuities (Section 2360); hence, the traction company acquired a fee-simple title. The alternative theory is that if the provision is valid, then title to the reversion vested in the owners of the adjoining property, being either the county, to which the contiguous street belongs, or the owners of the lots fronting thereon, who have surrendered whatever interest they had to the county.

Appellant relies on Duncan v. Webster County Board of Education, 205 Ky. 86, 265 S. W. 489. In 1865, one Duncan conveyed to school trustees an acre of land out of his farm, to be used as a public school, with a provision which this court construed as attempting to vest the right of reverter in whomsoever happened to own the original tract at the time the lot ceased to be used for a school. That occurred in 1921. Pointing out that it was never possible for the school trustees or anyone else joining with them to convey an absolute title, nor for anyone to release or quitclaim the limitation or condition attached to the title, we held the provision for reversion contravened the statute declaring that the absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of a life or lives in being at the creation of the estate and twenty-one years and ten months thereafter. Section 2360,

Kentucky Statutes. The terms of the Price deed are materially different. The reversion in remainder was retained in the grantors or "their respective heirs and assigns, the owners of the adjoining property." The circuit court was of opinion that the clause, "the owners of the adjoining property" was descriptive of the reversioners; otherwise the provision would offend the statute. It does not seem to matter whether the reference is to the "heirs and assigns" of the grantors generally or to those who might acquire the adjoining property by inheritance or conveyance, for in either event the power of alienation was not indefinitely suspended. The property right retained—the possibility of reverter—was ever in the grantors or in their heirs or their grantees, and could have been released at any time by whoever owned that remnant of the grantor's estate, generally or specifically. Patterson v. Patterson, 135 Ky. 339, 122 S. W. 169; Brill v. Lynn, 207 Ky. 757, 270 S. W. 20, 38 A. L. R. 1109; Bowling v. Grace, 219 Ky. 496, 293 S. W. 964; Fayette County Board of Education v. Bryan, 263 Ky. 61, 91 S. W. (2d) 990. If the Price deed had undertaken to confine the reversion in remainder to the ultimate owner of the adjoining property by making it an inalienable right running with that land up to the time the abandonment and reversion should take place, and had undertaken to inhibit a conveyance by anyone except by that person, unquestionably the restriction would be void as offending the statute against perpetuities. But we do not so construe it, and, therefore, concur in the circuit court's opinion that the provision for reverter was valid and that the traction company did not acquire a fee-simple title.

Morton, by mesne conveyances of the 11½-acre tract embracing the railway right of way, was one of the "assigns" of the original grantor, or, to speak more precisely, one of the assigns of his heirs. That he had title to the estate in reversion cannot be doubted under the foregoing construction of the Price deed. He never expressly parted with that title until after it became absolute by reason of the termination of the limited estate by cessation of use as a railroad right of way. The soundness of the appellant's second theory rests upon the determination of the effect or result of Morton's dedication as a public street of 30 feet con-

tiguous to the right of way and its acceptance as such by the county, and the subsequent conveyance of the lots abutting on the other side of it. The question is whether Morton thereby parted with title to the estate in reversion. We may overlook whatever distinction there may be between the dedication of a street in a city and of a highway in the country. In either classification, Morton, by filing the plat, made an express, irrevocable appropriation of the strip of land for public use. City of Middlesboro v. Kentucky Utilities Company, 237 Ky. 523, 35 S. W. (2d) 877; 16 Am. Jur., "Dedication," Sections 21, 22. We have a statute relating to the dedicataion of land as a street in cities of the second class, to which Lexington belongs (Section 3094, Kentucky Statutes), but none relating to such a transaction in the country. This was a common law dedication and the fee did not pass to the county nor the public represented by it. Halley v. Scott County Fiscal Court, 78 S. W. 149, 25 Ky. Law Rep. 1471; 16 Am. Jur., "Dedication," Section 56.

The purchasers of the lots abutting upon the street, and perhaps all those in the plot of ground covered by the plat and the subdivision, acquired certain special rights not ordinarily passing to the public generally. 16 Am. Jur., "Dedication," Section 57; Cf. Cranley v. Boyd County, 266 Ky. 569, 99 S. W. (2d) 737. But it is not necessary to say whether they acquired a fee in the entire dedicated street or to the center of it, subject to its continued use as a public way. See Hedge v. Cavender, 217 Ky. 524, 290 S. W. 342; Henry v. Board of Trustees of the Diocese of Kentucky, 207 Ky. 846, 270 S. W. 476; Henderson Elevator Company v. Henderson, 187 Ky. 453, 219 S. W. 809, 18 A. L. R. 983; Annotations, 18 A. L. R. 1008; 70 A. L. R. 564. Whatever that right of re-entry or possibility of reverter may be, it certainly does not extend beyond the limits of the street. Consequently, the lot owners did not acquire any title to the reversion in the railway right of way on the other side of it. The separation by the street and the express provisions of the original grant distinguish the case of Henry v. Board of Trustees of the Diocese of Kentucky, supra.

It was therein held that the owner of a lot bounded by a 15-foot strip of land used as an electric railway

was entitled to the strip when its use for that purpose was abandoned although the lot had been purchased as described by reference to a block letter and lot number on a recorded plat of a subdivision and the description did not cover the right of way. In addition to the conditions disclosed in the opinion, an examination of the record shows that the railway company had only a license granted by the ancestor of Henry, who had inherited and purchased the interests of other heirs in the entire tract, including the strip of land, and then subdivided it excepting the right of way. Henry claimed title to the possibility of reverter and the actual reversion as against the purchaser of the lot to which a part of it was contiguous. The court regarded that particular railway right of way as being the same as a public highway and applied the rule that the abandonment of such effects a reversion to the adjacent land, discharged of the easement.

Though it was within Morton's power to do so in connection with the rest of the parcel of land, or independently of it, he never divested himself of the estate in reversion until after title and possession had vested and then he conveyed it to Black. It, therefore, follows that the deeds to the county by the receiver of the traction company and the lot owners abutting on the street were ineffecive and that the trial court properly adjudged title to be in Black.

The judgment is affirmed.

Whole court sitting.