**C. W. AFFLICK, Jr., Plaintiff,**

v.

**PEKIN WOOD PRODUCTS COMPANY et al., Defendants,**

**Della Green et al., Intervenors.**

**No. H–523.**

United States District Court
E. D. Arkansas, E. D.

May 20, 1955.

Barrett, Wheatley, Smith & Deacon, Archer Wheatley, Jonesboro, Ark., for plaintiff.

Dinning & Dinning, W. G. Dinning, Helena, Ark., for defendants and intervenors.

LEMLEY, District Judge.

This cause is before the Court upon the plaintiff's motion for summary judgment, which motion has been submitted upon the pleadings in the case with certain exhibits thereto, certain stipulations of counsel and affidavits filed herein, copies of various documents of record in Phillips County, Arkansas, and written briefs.

The plaintiff, Charles W. Afflick, Jr., a citizen of Missouri, brought this action to recover possession of a strip of land, located within the corporate limits of the City of West Helena, Arkansas, 100 feet wide and more than a mile long, constituting the west half of the abandoned right of way of the Helena & Northwestern Railway Co.[1] Said right of way is bounded on the east by lands belonging to the defendants, who concededly own the east 100 feet of the right of way. Immediately west of and adjacent to the right of way is a street, 25 feet wide, designated on the original plats of the City of West Helena as "Panama Road", and which is now known as "Old Highway 20". Immediately west of the street are certain lots and blocks owned by the intervenors herein. While this action was commenced originally against the defendants, who, as stated, own lands immediately to the east of the right of way, the real controversy here is between the plaintiff, on the one hand, and the intervenors, on the other.[2]

Both the plaintiff and the intervenors claim title to the disputed area from a common source, namely the old West Helena Company, which in 1910 platted the original City of West Helena and dedicated the streets and alleys therein for public use,[3] and its corporate successor, the West Helena Consolidated Company.[4] It is the theory of the plaintiff that the underlying fee simple title to the west half of the right of way was not divested out of the West Helena Company by the latter's actions in dedicating the street which has been mentioned and in selling the lots and blocks adjacent to and west of the street; that in 1924 A. G. Burke, as Receiver of the West Helena Consolidated Company, conveyed to C. W. Afflick, Sr., plaintiff's father, certain of the assets of said company, including its interest in the area here in controversy, and that by virtue of that conveyance and of certain subsequent transactions and conveyances hereinafter set forth, plaintiff became the owner of an undivided one-third interest in the west half of the right of way, and that since the same has now been abandoned by the railroad, he is entitled to possession thereof.[5]

---

1. The Helena & Northwestern Railway Co. is the corporate successor of the old Missouri & North Arkansas Railroad Company, to which last named corporation the right of way here in question was originally granted. It is undisputed that some years back the Helena & Northwestern ceased operations and took up its tracks, and that the right of way has been completely abandoned as far as use for railroad purposes is concerned.

2. In a previous suit in this Court wherein Afflick was plaintiff and the defendants were, generally speaking, the same as those in the instant case, it was stipulated that the defendants owned the east 100 feet of the right of way, but had no proprietary claim to the west 100 feet thereof; pursuant to such stipulation a decree was rendered quieting plaintiff's title to an undivided one-third interest (See footnote 5, infra) in and to the west 100 feet, but expressly providing that it did not affect "the rights of any person, firm or corporation claiming any interest in the lands above described (the west half of the right of way) by reason of owning lands west of Old Highway No. 20". The defendants do not claim to own any part of the area here in dispute, but they do take a position adverse to the plaintiff, which position will be hereinafter stated.

3. In 1913 a supplemental plat and deed of dedication were filed by the West Helena Company.

4. These two companies will hereinafter be at times referred to collectively either as the "West Helena Company", or simply as "the development company".

5. The plaintiff's co-tenants are R. L. Brooks and J. B. Lambert, both citizens of Arkansas, who are not parties to this action. In the former suit which has

The intervenors contend, on the other hand, that when the West Helena Company dedicated the street lying to the west of the right of way, and subsequently sold off the lots and blocks west of the street, it parted with all of its interests in the underlying fee in both the west half of the right of way and the entire street, and that such fee vested in the property owners to the west of the street, and that they, as immediate or mesne purchasers from the development company of the lands lying immediately west of and adjacent to the street, now own the fee in the entire street, subject to the paramount rights of the public, and likewise own the fee title to the west half of the right of way, in proportion to their respective frontages upon the street.

The intervenors take the further position that even if their primary theory, just outlined, is incorrect, nevertheless the plaintiff must prevail here, if at all, upon the strength of his own title, rather than upon any weakness of theirs, and that he has no title or color of title. In this connection they contend that the Chancery Court of Phillips County never authorized, in the course of the receivership of the West Helena Consolidated Company, the sale of the property here in question; that said property was not advertised for sale by the receiver, and was not in fact sold by him, that the description in the receiver's deed to C. W. Afflick, Sr., was fatally indefinite as far as said property is concerned, and that the receiver's sale to Mr. Afflick, Sr., was set aside and annulled by the Supreme Court of Arkansas in the case of Polk v. Afflick, 168 Ark. 903, 271 S.W. 962.[6]

The controlling facts of the case, which, while somewhat involved, are not in substantial dispute, are as follows:

Prior to May 29, 1907, the lands embraced within the boundaries of the right of way were owned by James R. Bush; on that date he executed a right of way deed to the Missouri & North Arkansas Railroad Company, conveying to it a strip of land 100 feet wide; at that time Bush also owned certain lands lying adjacent to and east of the 100 foot strip just mentioned. In 1908 Bush conveyed such lands to E. C. Hornor; and on February 8, 1910, Hornor conveyed to the railroad another right of way 100 feet wide, adjacent to and immediately east of the original right of way; it will thus be seen that by virtue of the two deeds just mentioned the railroad acquired a right of way having a total width of 200 feet.

On March 31, 1910, Hornor conveyed to the West Helena Company his lands lying east of the right of way; and by that time said Company had also acquired ownership of lands lying to the west of the right of way. On June 21, 1910, the West Helena Company filed a plat of the original City of West Helena and a deed of dedication; said plat depicted the 200 foot right of way, and also showed the street here in question lying immediately adjacent to and west of the right of way. At this point attention is called to the fact that prior to the filing of the plat and deed of dedication, the railroad right of way had already been created, and that the land on both sides of it was owned by the West Helena Company; hence, the Company also owned the underlying fee title to the entire right of way, subject to the rights of the railroad.[7] Of course, the street did not come into existence until the filing of the plat and deed of dedication. After the filing of the instruments just mentioned, the development company proceeded to

---

been mentioned we held that the plaintiff had a right to maintain his action without joining his co-tenants, and that holding is applicable here. Had Mr. Brooks and Mr. Lambert been joined, this Court would have no jurisdiction, as there would have been an absence of diversity, some of the defendants being citizens of Arkansas or Arkansas corporations.

6. As indicated in a preceding footnote, the defendants concede, as indeed they must in the light of their stipulation in the former case, that they do not own any part of the west half of the right of way; but they claim to be entitled to the possession thereof as agents or tenants of the intervenors.

7. In Daugherty v. Helena & Northwestern Railway Co., 221 Ark. 101, 252 S.

sell the lots and blocks on the east side of the right of way and on the west side of the street.

After the West Helena Company was succeeded by the West Helena Consolidated Company, the latter became involved financially and a receiver was appointed by the Chancery Court of Phillips County and sale of the assets ordered. Two sales were held; the first, which was conducted on May 15, 1923, was set aside by the Court, and a re-sale ordered. The second sale took place on November 1, 1923; at that time the assets of the Company included a number of lots and blocks in the City of West Helena and also considerable unplatted acreage. When the sale was held, one E. M. Polk bid $3,775 for the unsold lots and blocks, and at the same time Mrs. Fannie M. Horner and J. T. Hornor, Trustee for the J. J. Hornor Estate, who were mortgage creditors of the Company, bid the amounts of their respective mortgages for certain specifically described real estate. Those bids were accepted by the receiver, and he duly filed his report of sale.

The receiver's report was considered by the Court on December 20, 1923; and on that date C. W. Afflick, Sr., made a written bid under the terms of which he offered to purchase, with certain exceptions not here pertinent, "All the right, title and interest including the equity of redemption which the West Helena Consolidated Company on the 1st day of November, 1923, owned had and could assert at law or in equity in and to all and singular all real, personal and mixed property including choses in and rights of action of every kind and character and without regard to value location and amount", for a price of $5,000, it being stipulated that the purchase would be subject to the Hornor mortgages and to certain other mortgages which we do not stop to mention.

The Court found that Afflick's bid was better than those of Polk and the Horn-ors, and ordered that those bids should be rejected and that of Mr. Afflick accepted. Pursuant to said order the receiver on January 5, 1924, executed his deed in favor of Afflick, conveying to him, in addition to certain specifically described properties,

"Also All and singular other real estate owned, held, claimed or possessed or to which the West Helena Consolidated Company may have, claim, possess or hold any right or interest in the real estate hereinabove described, or any and all other real estate not specifically mentioned herein, it being the intention to include in this decree (sic) any and all other real estate and equities of redemption owned, held and possessed by the West Helena Consolidated Company, or to which said Company may have a claim thereto either in law or equity.

"All of said property being situated in Phillips County, Arkansas."

Polk appealed, and the Supreme Court of Arkansas held that the Chancellor erred in setting aside his bid and accepting that of Afflick, and ordered that the cause be remanded to the Chancery Court for further proceedings. Thereafter, and on July 27, 1925, an order was entered by the Chancery Court providing that Polk be declared the purchaser of the specific lots and blocks upon which he bid, but that in all other respects the former order of the Court approving Afflick's bid and confirming his purchase should remain in full force and effect. Said order further provided that Mr. Afflick, Sr., should pay to the receiver for the benefit of Polk the sum of $540, representing rents which had been collected by Afflick on the properties adjudged to have been purchased by Polk, and that Polk should pay to the receiver for the benefit of Afflick the sum of $3,-775, representing the amount of Polk's original bid, plus the sum of $2,412.92, representing taxes which Afflick had paid

W.2d 546, it was held that the right of way deeds above mentioned created merely an easement in favor of the railroad and did not vest in it the fee simple title to the 200 foot strip of land.

on the properties which Polk had purchased; it was further provided that upon the payment to the receiver of the amounts just mentioned, the latter should "make separate deeds to the said E. M. Polk and C. W. Afflick for the respective properties herein allotted to each of them and that the Receiver make due report of his action in that behalf to this Court." Afflick appealed from that order, but the record reflects that his appeal was dismissed on April 19, 1926, and the order in question has long since become final.

It will be noted from the foregoing that the amount which Polk was to pay for Afflick's benefit was $6,187.92, whereas Afflick was obligated to pay for Polk's benefit only $540; it also appears that the costs of the action, which Afflick was required to pay, amounted to $61.50, leaving a net balance in favor of Afflick amounting to $5,586.42.

On July 28, 1925, the receiver executed a deed in favor of Polk conveying to him the properties which he had purchased, and on July 9, 1928, C. W. Afflick and his wife executed a quitclaim deed in favor of Polk covering the same properties. While it does not appear that the receiver ever actually executed in favor of Afflick the correction deed contemplated by the order of July 27, 1925, the uncontroverted affidavit of C. W. Afflick, Sr., established that in June of 1926 a settlement was agreed upon between him and Polk, and that Polk paid to him the net balance due him after deducting the $540 item and the $61.50 item above referred to. Said affidavit further establishes that after that time C. W. Afflick, Sr., was generally considered to be the owner of the real estate which he purchased from the receiver, except that portion which was adjudged to Polk, and that Afflick's title thereto has been recognized and accepted as merchantable, and that he has sold and conveyed all of such property, except the right of way here in question, by warranty deed, the purchasers being probably between fifty and one hundred in number. As stated, Mr. Afflick's affidavit is uncontroverted although the intervenors were expressly given an opportunity to controvert it if they so desired, and we accept it as true.

Subsequent to Mr. Afflick's purchase from the receiver, J. B. Lambert and one B. C. Pouncy each acquired undivided one-third interests in the properties, and subsequently Pouncy's interest was acquired by R. L. Brooks. On May 15, 1952, Afflick quitclaimed all of his interest in the railroad right of way to R. L. Brooks; on May 8, 1953, Brooks and Lambert quitclaimed to C. W. Afflick, Jr., the instant plaintiff, all of their interests in said right of way; five days later the plaintiff executed a declaration of trust to the effect that he was holding the right of way as trustee for his father, to the extent of an undivided one-third interest, and for Mr. Lambert and Mr. Brooks to the extent of an undivided one-third interest each. Finally on September 21, 1953, C. W. Afflick, Sr., quitclaimed to the plaintiff his undivided one-third beneficial interest in the right of way, and it is that interest which the plaintiff is asserting in the instant case.

Soon after the Helena & Northwestern Railway ceased its operations and removed its tracks, which occurred in 1951,[8] the defendants took possession of the right of way for its entire width and constructed certain fences along its west boundary. That action on the part of the defendants brought about the first suit in this court, which has been mentioned, which case was disposed of in the manner stated. After the decree was rendered in that case, the plaintiff called on the defendants to set their fences back 100 feet to the middle of the right of way, which they refused to do, stating that they were holding possession of the west half of the strip on the strength of the asserted title of the intervenors. The present suit followed.

In passing upon the contentions of the parties we take up first the question

---

8. See Daugherty v. Helena & Northwestern Railway Co., supra, 221 Ark. at page 102, 252 S.W.2d 546.

of whether or not the development company divested itself of its title to the west half of the right of way when it sold the lots and blocks on the west side of the street; it is conceded that said company did pass title to the east half of the right of way when it sold the property adjacent to the east side of the strip.

█ It is a well settled principle of Arkansas law that where one owns lands on opposite sides of a street or railroad right of way, a conveyance by him of such lands, in the absence of a manifestation of a contrary intent, carries with it the underlying fee in the lands subject to the easement, and completely divests such original owner of all interests therein; where the property on one side of the easement is sold to one person and that on the opposite side to another, each of the purchasers becomes the owner of the fee in one half of the area subject to the easement, and their boundary is the middle thereof; upon abandonment of such easement, the fee owners become entitled to the possession and full enjoyment of the area formerly subject to such easement to the extent of their respective ownerships. Taylor v. Armstrong, 24 Ark. 102; Dickinson v. Arkansas City Improvement Co., 77 Ark. 570, 92 S.W. 21; Matthews v. Bloodworth, 111 Ark. 545, 165 S.W. 263; City of Fordyce v. Hampton, 179 Ark. 705, 17 S.W.2d 869; McGee v. Swearengen, 194 Ark. 735, 109 S.W.2d 444; Pyron v. Blanscet, 218 Ark. 696, 238 S.W.2d 636; Crute v. Hyatt, 220 Ark. 537, 249 S.W.2d 116. The principle just stated is based upon the rebuttable presumption that the grantor under such circumstances does not intend to reserve for himself any interest in the land subject to the easement. 8 Am.Jur. "Boundaries," Sections 36 and 37; 11 C.J.S., Boundaries, § 104 a(4) (6). In 8 Am.Jur., page 773, it is said: "This presumption is one of apparent probability, based upon the actual intention in a vast majority of land transfers to convey all the grantor's interest in the tract, rather than to reserve the fee in the highway". And on the following page of the same volume it is said that the rule is not absolute, irrespective of manifest intention, "but is merely a principle of interpretation inferred by law, in the absence of any definite expression of intention, for the purpose of finding the true meaning of the words used." Likewise in 11 C.J.S., Boundaries, § 35, pp. 581–582, the rule is referred to as being one of construction, and that effect should be given "to the intention of the parties in view of the whole instrument and the surrounding circumstances."

█ It may be conceded that if the right of way and the street are to be considered together as one easement—as a unit—then it would appear that the general rule above quoted would be applicable here, and that title to the area in controversy would be in the intervenors. We do not believe, however, that the right of way and the street can be properly so considered. It will be recalled that the railroad right of way was created by two separate deeds, executed, respectively, in 1907 and 1908, whereas, the street was not dedicated until 1910; moreover, the right of way was created by private individuals, whereas the street was dedicated by the development company; and, furthermore, the purposes of the two easements were different, one was for the benefit of the railroad, whereas the other was for the benefit of the general public. Under such circumstances we are satisfied that the easements, although adjacent, were separate and distinct; and we do not believe that the general rule relied upon by the intervenors is applicable here. There is nothing in the plats or deeds of dedication, which have been mentioned, or in the deeds from the development company to the intervenors and their predecessors, which are in evidence before us, to indicate that the company intended in dedicating the street and in selling lots on the west side thereof to vest in the purchasers the fee title to not only the west half of the street but also to the east half thereof together with the west half of the railroad right of way, and we do not believe that it can be reasonably presumed that the development company

had any such intent. Nor do we believe that the purchasers of such lots could reasonably believe or expect that their interests extended completely across the street and for a hundred feet beyond merely by reason of the fact that the property opposite them happened to be subject to a railroad right of way. In our opinion when the development company conveyed the land east of the right of way to the defendants and their predecessors, there was vested in them the underlying fee simple title to the east half of the right of way; and that when such company conveyed the lots west of the street to the intervenors and their predecessors, there was vested in them the underlying fee simple title to the west half of the street. We are satisfied that the conveyances above referred to did not divest the development company of its interest in the west half of the right of way or in the east half of the street, and we hold that the intervenors have no title to any land east of the center of the street.[9]

The result here reached is in accord with the decision of the Supreme Court of Arkansas in McGee v. Swearengen, supra, which we believe to be in point. The facts in that case may be summarized as follows:

One Monaghan owned property in Crittenden County adjacent to the City of West Memphis, which property was bordered on the south by U. S. Highway No. 70; an improvement district acquired a right of way for drainage purposes immediately north of and adjacent to the highway; thereafter Monaghan platted some of his property into lots and blocks and laid out a street immediately north of and adjacent to the drainage district right of way. In 1926 he conveyed to a Mrs. McGee a portion of his property, namely lot 8 in block 12, fronting on the street; in 1930 he sold

to one Doyle a tract of land within the borders of the drainage district easement and directly south of Mrs. McGee's property, the street intervening between them. Doyle secured permission from the Board of Commissioners of the drainage district to construct a building on said tract of land, it being stipulated that such building would not interfere with the flow of water through the ditch. Thereafter Doyle died and devised all of his property to the appellee, Swearengen. In 1935 the street which has been mentioned was abandoned; it appears that Mrs. McGee obtained possession of the property which had been conveyed to Doyle and devised by him to Swearengen, and that the latter brought ejectment to recover possession. In resisting Swearengen's claim Mrs. McGee contended that upon the abandonment of the street she obtained absolute title to the entire width thereof, and, further, that she was also the owner of the fee in the right of way opposite the property conveyed to her by Monaghan, subject to the rights of the drainage district, and that she also owned to the middle of Highway 70, subject to the rights of the public. Swearengen contended among other things that at most Mrs. McGee's title extended no further than the center of the street, and this was the view adopted by the Supreme Court on appeal.[10]

The Court, after pointing out that it had found no Arkansas cases adjudicating a controversy analogous to the one before it, went on to hold that when the drainage district acquired the easement immediately north of the highway, the fee remained in Monaghan, and that subject to the rights of the district he could deal with it as he chose, and that he likewise owned the underlying fee at least to the middle of Highway 70, and that if it should be shown that he owned property beyond Highway 70, then he

9. Since the street is still in active use, the rights of the parties therein are subject to the paramount rights of the public.

10. In the lower court Swearengen contended further that by reason of the wording of Mrs. McGee's deed she took no part of the street, and that court so held; on appeal the judgment was modified to the extent above indicated.

would own the fee in the entire highway. The Court then said:

"(4) Since the drainage district had been created prior to the time Monaghan plotted the block and lots in section 12 and dedicated the streets and alleys, inclusive of Nance avenue [the street involved], and no words appearing in the dedication of Nance avenue evidencing an intent to extend its area south of the 40 feet shown by the plat, it will not be presumed that any part of the drainage property was included in the grant, nor did Monaghan's reserved fee in the drainage tract, by operation of law, attach to and become a part of Nance avenue to such an extent that a conveyance of the fee to lot 8 in block 12 (lying immediately north of Nance avenue) would vest in the grantee any rights in the fee of the drainage district property." 194 Ark. at pages 742–743, 109 S.W.2d at page 448.

The Court then went on to hold that Mrs. McGee's deed extended her title to the center of the street, and concluded its opinion by saying:

"We hold, therefore, that appellant's south line is the center of Nance avenue, and that appellee retained the fee to the drainage district land, subject to its public attributes; and that appellee's fee in Nance avenue, incidental to his fee in the drainage district lands, extends northward to the center of Nance avenue to the point where it meets the fee of appellant McGee." 194 Ark. at page 743, 109 S.W.2d at page 448.

Further support for our holding is found in Fayette County v. Morton, 282 Ky. 481, 138 S.W.2d 953, the facts in which case were substantially as follows: The owner of certain property, which was bounded on the west by the right of way of an inter-urban railroad and still further to the west by a public highway, platted said property into lots and blocks and sold it; the plat showed a street running north and south immedi- ately east of the inter-urban railroad right of way. After the abandonment of the railroad right of way, the original owner sold a portion of it to one Black for filling station purposes; thereafter the lot owners to the east of the street undertook to convey the railroad right of way to the county for the widening of the highway. The Supreme Court of Kentucky held that the interests of such lot owners did not extend beyond the middle of the street.

We have considered the several cases cited by the intervenors on this phase of the case, and while those cases are no doubt sound on their own facts, none of them involved a factual situation similar to that presented here.

Having determined that the development company never divested itself of its interest in the west half of the right of way, it remains to be considered whether or not the plaintiff has succeeded to that interest so as to be entitled to maintain this suit; and we conclude that he has.

While it is true that none of the documents which have been mentioned in connection with the receivership of the development company specifically mentions the right of way, and while it may be true, as intervenors contend, that none of the parties interested in the receivership proceedings had the right of way specifically in mind at the time, it is clear that it was the intention of the Court to direct the sale of all of the assets of the Company, and it is equally clear that it was Mr. Afflick's intention to buy, subject to certain specific exceptions, all of the property and interests therein which the Company owned or to which it might legitimately lay claim either at law or in equity; and it is also plain that it was the intention of the receiver to sell to him all of the property and interests therein owned by the Company or subject to its claims, except those portions which were excluded from the Afflick bid. The very fact that Mr. Afflick in his bid referred to all real, personal or mixed property, including choses in and rights of action "of every kind and character and

without regard to value, location and amount", indicates to us that he recognized that there might be certain property or interests therein owned by the Company or to which it might legitimately lay claim, which was not known at the time, and that he desired to make it plain that he was to acquire such property or interests should his bid be accepted; and we likewise feel that the broad language of the receiver's deed indicates the latter's intention to convey such property or interest to Mr. Afflick. In other words, whatever the Company owned, with exceptions as above. noted, Mr. Afflick purchased; and it should be kept in mind that the Company's interest in the west half of the right of way was not a mere expectancy or possibility, but was an estate in presenti, and we are satisfied that it passed by the deed.

■■ In their argument that the sale to Afflick was set aside by the Supreme Court intervenors apparently overlook the proceedings which took place in July of 1925 after that Court's mandate had come down. As we have seen, the Chancellor in those subsequent proceedings decreed that Polk was the purchaser of the specific properties upon which he had bid; but in all other respects the original bid and purchase of Afflick were "renewed, approved, ratified and confirmed" as to all of the other property of the development company which Afflick had bought, which would include the portion of the right of way here in dispute. True, it appears that the receiver never executed in Afflick's favor the correction deed referred to in the order just mentioned; but, as pointed out, the uncontroverted affidavit of Mr. Afflick is to the effect that subsequently he and Polk reached a settlement whereby Polk paid to him the balance due after deducting the items for which Afflick was liable, and Afflick thus became entitled to the execution and delivery of a deed by the receiver. Equity regards as done that which should have been done, and we feel that the fact that such deed was not in fact executed is immaterial. In our view C. W. Afflick, Sr., acquired title to the right of way from the receiver of the development company, and the plaintiff has succeeded to that title to the extent of an undivided one-third interest.

■ Intervenors contend that the clause in the receiver's deed under which the west half of the right of way passed, if at all, which clause they refer to as the "catch-all clause", and which has been quoted above, was void for indefiniteness of description. We cannot agree; said clause was followed by the phrase, "All of said property being situated in Phillips County, Arkansas." We feel that the addition of this geographical limitation furnished a key by which the property might be identified, and that the description was sufficient. Turrentine v. Thompson, 193 Ark. 253, 99 S.W.2d 585; Snyder v. Bridewell, 167 Ark. 8, 267 S.W. 561. In the Turrentine case [193 Ark. 253, 99 S.W.2d 586] a grantor undertook to convey " 'All the right, title, interest, equity, and/or claim of every kind or character, which I may now or hereafter have, as heir of Richard Turrentine, deceased, in and to all * * * real, personal or mixed property of every kind or nature and wherever situated' "; the Court held the description bad for the reason that it furnished no key whereby the land could be identified. It was said:

"* * * The rule in this state as to whether descriptions in deeds are sufficient to convey title is that the description therein must furnish a key by which the land attempted to be conveyed can be definitely located. * * * It will be observed that the description in the deed does not identify it as being in any county or even in the state. It does not furnish a key by which the land might be certainly identified. For aught said in the deed, the land intended to be conveyed might be in another state. Had the deed said that it was all the land owned by Will Turrentine *in Hempstead county, Ark.*, the deed, itself, would have *furnished a key by which the land might be located,*

but to simply say it was all the land owned by him, wherever situated, is too uncertain and indefinite to furnish a key by which any particular land might be identified." 193 Ark. at page 254, 99 S.W.2d at page 586, emphasis added.

Here, as indicated, we think there is a sufficient key whereby the property intended to be conveyed by the "catch-all clause" could be identified.

Let an order be entered sustaining the plaintiff's motion; counsel for the plaintiff may within twenty days submit a formal precedent for judgment after obtaining the approval of counsel for the defendants and intervenors as to the form thereof.

