## D. V. and J. M. Duncan v. Webster County Board of Education.

(Decided October 17, 1924.)

Appeal from Webster Circuit Court.

1. Perpetuities—Attempt to Vest Reversionary Right Invalid.—Attempt to vest reversionary right in land conveyed for school purposes out of larger tract, in whomsover happened to own original tract at time property should cease to be used for school purposes, is invalid under Ky. Stats., section 2360, relating to suspension of power of alienation.

2. Deeds—Conveyance by One Not Shown to have Interest in Property Conveys Nothing.—Conveyance of reversionary interest in property used for school purposes, by persons not shown to have any interest in such reversion, conveys nothing, and does not affect persons not privy to it.

M. L. BLACKWELL and C. W. BENNETT for appellants.

RAYBURN & WITHERS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In this action, the plaintiff J. M. Duncan, and each of the defendants, the Webster County Board of Education and D. V. Duncan, claims to be the absolute owner of a one-acre tract of land, but all agree that the board of education is now and has been since 1865 in possession of same; that continuously from 1865 until 1921, it used the lot and the schoolhouse thereon for public school purposes; that it ceased to use same for that purpose in 1921, and will not hereafter so use it.

As the school board is admittedly in possession of the property, it is immaterial whether or not it also has title thereto, since clearly neither of the Duncans is entitled to disturb its possession, unless one or the other of them has title thereto. We need therefore only in-

vestigate their respective claims of ownership, and we shall first consider that of D. V. Duncan, since a demurrer was sustained to his plea of title, which must be taken as true for the purposes of this investigation.

He asserts, in substance, that in 1865, and while the owner of a 102-acre tract out of which the one acre was carved, one W. P. Duncan conveyed the one-acre tract to the trustees of the school district, "to be used for the purpose of erecting and maintaining thereon a public school, and providing in said agreement that when said property was no longer used for the purpose of maintaining thereon a public school, the said one acre of land should revert to the tract of land, or to the person then owning and possessing the said tract of land." He further alleges that W. P. Duncan thereafter conveyed the larger tract to Thomas Duncan, who conveyed to James Morehead, who conveyed to plaintiff J. M. Duncan, and that each of said conveyances, after describing the larger tract, contained this clause:

"One acre excepted near the southeast corner of the survey where the school house stands for the use of a school house as long as it is kept up for a school house, and when it is no longer kept up then the acre of land belongs with the said tract of land."

He further alleges that J. M. Duncan conveyed 27 acres of the larger tract, which surrounds and incloses the one-acre tract, to Edmund Stone, but provided therein that "said Edmund Stone to have no claim on the schoolhouse lot," and that the 27-acre tract was conveyed to his immediate grantor and to him without reservation or restriction of any kind.

He further alleges the abandonment of the use of the one-acre lot for school purposes in 1921, and while his immediate vendor was the owner of the 27-acre tract which surrounded it, and that because thereof the title to the school lot reverted to the then owner, his immediate vendor, who conveyed same to him.

Obviously, and as is conceded by counsel for D. V. Duncan, his claim of ownership rests solely upon the theory that the alleged conveyance in 1865 by W. P. Duncan to the school trustees vested either a defeasible or base fee in the school board (as certainly it did), and at the same time *vested* the contingent right to take the fee whenever the condition for defeasance or reverter oc-

curred in whomsoever at that time happened to be the owner of the original tract of 102 acres (as certainly it attempted to do).

But whether the school board's alleged estate be a defeasible or base fee, and the reversionary right a contingent estate and salable or merely a bare possibility of reverter and inalienable, is immaterial and need not be decided, since in either event the attempt to vest the reversionary right in whoever happened to own the original tract is plainly violative of both the letter and the spirit of section 2360, Kentucky Statutes, which reads:

> "The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter."

As this court has frequently held:

> "The test of whether such a provision is contrary to the statute is not whether it may or may not happen within the period fixed by the statute, but whether it is possible that it might not so happen, a possible perpetuity being such a perpetuity as the statute contemplates." Tyler v. Fidelity & Columbia Trust Co., 158 Ky. 280, 164 S. W. 939; Fidelity & Columbia Trust Co. v. Tiffany, 202 Ky. 618, 260 S. W. 357.

That the absolute power of alienation possibly was suspended by these limitations and conditions for a period longer than during the continuance of a life or lives then in being and 21 years and 10 months thereafter is obvious, since the lot might have been used for school purposes for a much longer time, and during such time, whatever its length, not only was it impossible for the school board to make absolute title to the lot, but there was no one else, who joining with it, could do so; nor anyone even with power to release or quit-claim the limitation or condition attached to its title.

As a consequence, there is no basis whatever upon which D. V. Duncan can rest a claim of title to the school lot, and the court did not err in sustaining a demurrer to his counterclaim and cross-petition, or in dismissing same upon his refusal to plead further.

Coming now to the claim of J. M. Duncan, we find even less upon which to rest it, since it is based solely

upon the admitted fact that James Morehead, in 1874, attempted to convey to him a reversionary right to the school lot, without proof that Morehead ever owned any such right, although such fact was put in issue by the school board's answer.

It is true deeds were filed showing such a right was conveyed to Morehead by Thomas Duncan, and that same was conveyed to him by W. P. Duncan, but there is no showing whatever that the latter owned any such right, or even that the school board derived whatever right of occupancy it had in the lot from him, and manifestly these deeds to which the school board was neither a party nor a privy are insufficient to show title to the lot in Duncan, or to define or limit the school board's right of occupancy.

Judgment affirmed.