JONES *v.* BURNS, et al.

No. 39270 October 18, 1954 74 So. 2d 866

*J. D. Guyton,* Kosciusko, for appellant.

*Morgan & Morgan,* Kosciusko, for appellees.

APPELLANT IN REPLY.

ROBERDS, P. J.

This proceeding involves the title to two acres of land. B. L. Jones filed the bill herein asserting title thereto. Appellees, defendants to the bill, consisting of seven persons, claim to be the owners thereof. The lower court found in favor of appellees and Jones appeals.

The title is to be determined by the construction of a deed executed by A. B. Jones and his wife, Annie F. Jones, October 2, 1916, and the subsequent events occurring thereafter.

That deed, in its pertinent parts, reads:

"For and in consideration of the sum of One Dollar, cash in hand paid, and the further consideration for the use and benefit of East Union Consolidated School,

"We convey and warrant to the Trustees of East Union Consolidated School and their successors the following described land, * * *

" * * * so long as said above described land is used for the East Union White Consolidated School, when said above described land ceases to be used for the purposes mentioned above, it is to revert to the owner of the NE¼ of the SE¼, Section 34, Township 14, Range 7, containing two acres, more or less."

A. B. Jones departed this life in 1933. He left a last will and testament dated March 2, 1913, but this will

seems to have only disposed of personal property. He left as his heirs-at-law his wife and five children. The widow and four children conveyed their interest in the two acres of land in controversy to the complainant, B. L. Jones, who was an heir and child of A. B. Jones. In other words, when this litigation was begun, B. L. Jones owned all of the interest in the two acres of land that A. B. Jones owned when he executed his deed.

The two acres of land were used for school purposes from October 2, 1916, date of the deed to the Trustees, until July 1, 1953, or shortly before that date. On that day the Trustees of the school executed a quitclaim deed to the two acres, endeavoring to convey title thereto to the seven appellees herein. That deed referred to the provisions of the deed of October 2, 1916; stated as a fact that the property had been abandoned as school property and had ceased to be used for that purpose, and that the school district had been abolished. It then undertook to quitclaim unto the seven named grantees the title to said two acres of land, reciting that said grantees were then the owners of the remainder of the forty acres out of which the two acres had been carved.

The record does not disclose how appellees, grantees of the School, came by the title to said thirty-eight acres, nor their respective interests therein. In other words, there is no showing as to when or how the original owner, A. B. Jones, parted with title to the thirty-eight acres, nor how or when appellees came by the title thereto. However, copies of both the Jones and the School Trustees deeds were exhibited to the bill, and all parties to this proceeding proceed upon the assumption that the grantees in the School deed are the owners of the remainder of the forty acres out of which the two acres were carved.

Three of the defendants have made no appearance in the cause. Four of them joined in a general demurrer, setting up (1) that there is no equity on the face of the

bill; and (2) that the bill and exhibits show that complainant Jones has no title or interest in the two acres of land. The court sustained the demurrer, and complainant Jones refusing to plead further, the court dismissed the bill with prejudice, and Jones appeals.

Jones contends that the limitation clause to the "owner" contained in the 1916 deed is invalid in that the provision is too indefinite and remote and violates the rule against perpetuities. The courts so hold. 41 Am. Jur. 75, Section 31; Duncan v. Webster County Board of Education, 205 Ky. 86, 265 S. W. 489; McGaughey v. Spencer County Board of Education, (Ky.), 149 S. W. 2d 519, 133 A. L. R. 1474; Institution for Savings in Roxbury and Vicinity v. Roxbury Home of Aged Women, 244 Mass. 583, 139 N. E. 301; Yarbrough v. Yarbrough, 151 Tenn. 221, 268 S. W. 36.

On the other hand, a reservation to the grantor or his heirs is a vested interest and is not within the rule against perpetuities. The distinction is shown by this quotation from 41 Am. Jur. 75, 76, 77, Section 31:

"A possibility of reverter which remains in a grantor or his successor in interest, or in a testator's heirs or devisees, where there has been created a fee simple determinable, is not subject to the rule against perpetuities. Thus, a conveyance of land to a school district upon condition that the land be used only for school purposes, the land to revert to the grantor if the district ceases to use the land for school purposes or uses it for any other purpose, does not violate the rule against perpetuities, as the possibility of reverter vests in the grantor, which he may convey and which descends to his heirs or which he may transmit by will. Neither does the right of re-entry for condition broken, which remains in the grantor or his successors or those succeeding to the interest of a testator, where an estate on condition subsequent has been created, subject to the rule in the United States. Neither the possibility of reverter nor the right of re-entry for

condition broken come into being under the deed or will by which the determinable or qualified fee or the estate on condition subsequent is created, but are segments remaining in the grantor or the testator's successors and which come into effect upon the lapsing or expiration of the determinable or qualified fee in the one case, or the actual re-entry upon the happening of the condition subsequent in the other. As they have never been conveyed, the rule against perpetuities is not considered applicable to them. But if the instrument creating the determinable or conditional fee provides for a limitation over to a third person following the expiration of a determinable fee or the cutting off of a defeasible fee, the rule against perpetuities applies for the limitation over, sometimes called an executory limitation or conditional limitation, arises by virtue of the grant or devise and goes to a third person rather than merely remaining in the creator of the estate or his successors in interest. For example, it has been held that a devise of a house and land to deacons of a church and their successors forever, on condition that the minister or eldest minister of said church shall constantly reside and dwell in said house during such time as he is minister of said church, and in case the same is not improved for that use only, then the bequest to be void and of no force, and said house and land then to revert to the nephew of testatrix, is a conditional limitation to the nephew, and not a devise on condition, and as such is void for being too remote. And, generally, a limitation over in a deed creating a determinable fee which shall end if the land ceases to be used for a specified purpose is void for remoteness. Where the prior gift fails at once, however, and the gift over is immediate, there can be no objection on the ground of the rule against perpetuities.

"While there may have been some doubt previously as to the rule in England, it was generally stated that the rule against perpetuities applied to rights of re-entry for

condition broken. The Law of Property Act of 1925 provides that the rule applies to such interests.

"Statutory provisions relating to perpetuities which restrict the suspension of the absolute power of alienation have been held not to be violated by a provision for reverter, or for right of re-entry for condition broken, in favor of the grantor, his heirs or assigns, on discontinuance of the use of the property for the purpose specified in the instrument creating the estate, whether a determinable fee or an estate on condition subsequent. The basis of these decisions is that the absolute power of alienation is not unlawfully suspended where there are known persons in being who can piece together their interests so as to pass a fee simple by their united conveyance. On the other hand, where the person who is to take in event of a discontinuance of the specified use of the property is described merely as the 'owner' of the tract from which the property in question was derived, or is similarly designated in a manner in which his identity is made contingent, it has been held that a statute restricting the right to suspend the absolute power of alienation for a specified period is violated if there is a possibility that the discontinuance may occur beyond the statutory period."

Appellees do not seriously question the correctness of the foregoing announcement.

 With the limiting provisions out, there is left the conveying clause of the Jones deed. That clause conveyed the two acres to the School "so long as said above described land is used for the East Union White Consolidated School." The later limiting clause neither restricts nor enlarges the estate vested by the conveying provision. That which was conveyed was title to the property "so long as" used for a school. "Where an interest of an estate is given by a deed or will with a limitation over on a specified contingency, such limitation, if it violates the rule against perpetuities, is for the

purpose of determining the effect on the prior disposition of the property to be considered as stricken out, leaving prior disposition to operate as if the limitation over had never been made." Reddoch v. Williams, 129 Miss. 706, 92 So. 831; American Oil Company v. Williamson, 154 Miss. 441, 122 So. 488. " * * * If a limitation over is void by reason of its remoteness, it places all prior gifts in the same situation as if the devise over had been wholly omitted." Reddoch v. Williams, supra; Nicholson v. Fields, 111 Miss. 638, 71 So. 900. The limiting clause being stricken, we are confronted with the specific question whether the clause conveying title as long as the property should be used for a school prescribed a covenant or described a condition subsequent. In either event Jones, or his heirs, had the right to invoke his rights in this proceeding. We have concluded the cessation of use of the property for school purposes was a condition subsequent and not a covenant.

 The intention of the parties is the final test. "The courts have consistently adhered to the view that in their interpretation of covenants, the cardinal principle, or most persuasive guide for them to follow, is the intention of the parties as it may appear or be implied from the instrument itself." 14 Am. Jur. 486, Section 7.

Now, Jones conveyed the property to the school "so long" as it might be used for school purposes. It was not a conveyance of a fee simple title cut down by a later limitation. The only title the school ever had was during the time the property should be used for school purposes. The title ceased when the school use ended. Jones and the Trustees knew that.

Again, in determining whether a provision is a covenant or a condition the circumstances surrounding the parties when the instrument was executed must be considered. 14 Am. Jur. 486, Section 74; Thompson on Real Property, Permanent Edition, p. 583, Section 2050. The School Trustees had no power to guarantee that this

property would forever be used for school purposes. It reasonably could not be presumed they thought they could do that and if it was not so used such failure would be a breach of a covenant subjecting them, or their successors, to liability for damages. Nor could Jones, as a man of ordinary reason and intellect, think he could ever collect damages out of a school or the trustees thereof for breach of any such covenant. All that could be done as between Jones and the Trustee was to create a condition on the happening of which the title to the property would be divested out of the grantees. It was not possible to impose upon the trustee or the school a legal claim for damages for breach of a covenant, which is the remedy in such cases. It would seem certain that neither Jones, as grantor, nor the trustees, as grantees, thought they were entering a covenant contract. The Trustees knew that the only result that could follow from ceasing to use the property for school purposes would be the loss of title thereto. It will be noted that the consideration for this deed was a nominal sum of one dollar ''and the further consideration for the use and benefit of East Union Consolidated School,'' showing that use by the school was really the only consideration.

Where a tract of land was granted to the Board of County Police ''for the use and benefit of the County of Neshoba, for a county site for a courthouse * * *,'' etc., a courthouse was built thereon but subsequently the county site and the courthouse were removed from the tract of land, the land thereupon reverted to the grantor. There was no express reverter clause in this deed and, by its terms, it conveyed the title ''forever.'' Daniel v. Jacoway, Freem. Ch. 59(Miss.).

The following cases support, at least in principle, the conclusion we have reached herein. Grissom v. Hill, 17 Ark. 483; Spies v. Rome, W. & O. Ry. Company, 39 N. Y. S. 764; Henderson v. Hunter, 59 Pa. 335; Pepin v. Prindle, (Wis.), 21 N. W. 254; Odell v. Cannon, 79 Ga. 215,

4 S. E. 558; Cleveland C. C. & I. R. Company v. Coburn, 91 Ind. 557.

Reversed and judgment here for appellant.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.