366 So.2d 1079 (1979)
The CITY OF LAUREL, a Municipal Corporation, the Laurel Urban Renewal Agency, a Body Corporate and Politic,
v.
Viola D. POWERS and Curtis N. Jones.
No. 50659.
Supreme Court of Mississippi.
January 10, 1979.
*1080 Pickering & McKenzie, Franklin C. McKenzie, Jr., Gibbes, Graves, Mullins, Bullock & Ferris, Ernest W. Graves, Laurel, for appellant.
Lunsford Casey, Thomas Gene Clark, Laurel, for appellee.
Before PATTERSON, SUGG and BOWLING, JJ.
SUGG, Justice, for the Court:
This is an appeal from a final decree of the Chancery Court of Jones County, awarding damages to complainants, Curtis N. Jones and Viola D. Powers, for taking private property by the City of Laurel by inverse condemnation. The complainants owned Lot 7 of the Commercial Block Addition to the City of Laurel, and on September 18, 1959, Jones executed a deed which conveyed his one-half interest in Lot 7 to the city. His deed provided for a reverter in the following language:
This conveyance is made in order that the grantee may establish thereon a public parking lot and is made only for so long as the property conveyed is used for a public parking lot, and if, at any time, it shall cease to be used for such purpose, title shall automatically and immediately revert to the grantor, his heirs, successors or assigns.
On September 1, 1959, Viola D. Powers, executed a lease contract with the city leasing her one-half interest in Lot 7 to it. The lease contained a provision giving the city an option to purchase her interest which was exercised by the city on September 20, 1973. Her deed contained the same provision for reverter as the Jones deed.
Complainants alleged in their bill of complaint that title to a part of Lot 7 reverted to them when the city conveyed part of Lot 7 to the Laurel Urban Renewal Agency (hereinafter LURA) for the purpose of using that part of the lot for a street rather than for parking; that acquisition of the property by LURA was made with federal or federal aid funds; that the ultimate result will be that LURA will return the property to the city, thus enabling the city to accomplish indirectly what it could not do directly because of the reverter provisions in the deeds from complainants; that the action of the city amounts to inverse condemnation; that complainants are entitled to compensation for the property taken with damages to the remainder, and are also entitled to reasonable expenses, including reasonable attorneys' fees, appraisal and engineering fees. Complainants prayed for a decree adjudging them to be the true owners of Lot 7, for cancellation of the deed from the city to LURA. In the alternative, they prayed for a decree for the fair market value of the property, including damages to the remainder with interest together with costs, reasonable attorneys' fees and appraisal and engineering fees.
At the trial the parties stipulated the following:
1. That Lot 7 contained 7500 square feet.
*1081 2. That the city conveyed to LURA 3,264.39 square feet of Lot 7 on December 11, 1973.
3. That LURA used the portion of Lot 7 deeded to it by the city for widening Fifth Street and Auburn Avenue, as a part of the "Laurel Central Business District Urban Renewal Area Project R-27."
4. That federal funds were used in Project R-27. That in consideration of the conveyance by the city to LURA of a part of Lot 7, the city received as credit toward payment of its part of the cost of Project R-27 the amount of $23,831.00 which amount was arrived at as follows:

 A. Fair market value of the
 fee simple title to that
 portion of Lot 7 conveyed
 by the city to LURA ............ $ 14,690.00
 B. Severance damages to the
 remainder of Lot 7 ............. $ 7,836.00
 C. Value of the improvements
 on that portion of Lot 7
 conveyed by the city to LURA ... $ 1,305.00
 ___________
 $ 23,831.00

From the exhibits attached to the stipulation it was established that the number of parking spaces on Lot 7 was reduced from twenty-four to six after widening Fifth Street and Auburn Avenue.
The final decree adjudged that the complainants were entitled to recover compensation damages in the amount of $23,831.00 for the inverse condemnation with interest from December 11, 1973 at the rate of 6 percent per annum until July 1, 1977 in the amount of $5,004.51. The decree further provided that the interest should be added to the damages making a total of $28,835.51, plus $3,000.00 attorneys' fees which was allowed for a total judgment of $31,835.57. The decree also provided that the judgment should bear interest at the rate of 8 percent per annum from the date of the decree, July 1, 1977, until paid.
The city appealed and assigns the following as error:
1. The trial court erred in finding as a matter of law that the use of the property for street widening purposes constituted a violation of a reverter provision limiting the use of the property to a public parking lot.
2. The trial court erred in finding as a matter of law that the conveyance of the property by the City to the Urban Renewal Agency constituted a voluntary abandonment of the property for use as a public parking lot, thereby causing title to the property to revert to Appellees.
3. The trial court erred in awarding judgment to Appellees for damages to the remainder of the property not used for street widening purposes and in awarding damages for paving improvements on the property used.
4. The trial court erred in awarding interest on the judgment from the date the property was conveyed by the City to the Urban Renewal Agency.
Before treating the assignments of error, the respective interests of the complainants and the city under the deeds should be noted. Complainants conveyed to the city Lot 7,
[F]or so long as the property conveyed is used for a public parking lot, and if, at any time, it shall cease to be used for such purpose, title shall automatically and immediately revert to the grantor, his heirs, successors or assigns.
These deeds created a determinable fee estate[1] in the city, with a possibility of reverter, in fee simple absolute, remaining vested in the complainants. Jones v. Burns, 221 Miss. 833, 74 So.2d 866 (1954). When complainants conveyed Lot 7 to the city "so long as" it might be used for public parking, it was not a conveyance of a fee simple title cut down by a later limitation. The only title the city ever had was during the time the property should be used for public parking. The title ceased when the public parking use ended. The cessation of the *1082 use of the property for public parking was a condition subsequent and not a covenant.
We have also held that a reservation to the grantor or his heirs is a vested interest and is not within the rule against perpetuities. St. Regis Pulp & Paper Corp. v. Floyd, 238 So.2d 740 (Miss. 1970); Jones v. Burns, supra. The protected status granted a possibility of reverter from the rule against perpetuities has been the subject of much criticism. In the City of Klamath Falls v. Bell, 7 Or. App. 330, 490 P.2d 515 (1971), the Court stated in footnote 3 the following:
It is well settled that the rule against perpetuities does not apply to possibilities of reverter. Gray, The Rule Against Perpetuities 46, 348, 349, §§ 41, 313, 314 (4th ed. 1942); Simes and Smith, The Law of Future Interests 311, § 825 (2d ed. 1956); Tiffany, Real Property 167, § 404 (3d ed. 1939). This historical anomaly has been criticized for allowing `dead hand rule' and creating `appalling practical results' when a possibility of reverter does fall in many years after the original grant. Leach, Perpetuities in Perspective: Ending the Rule's Reign of Terror, 65 Harv. L.Rev. 721, 739 (1952); Leach, Perpetuities: The Nutshell Revisited, 78 Harv.L. Rev. 973, 980 (1965).
However, as pointed out in 18 Or.L. Rev. supra, at 79:
`* * * [A] rule restricting the alienation of such interests will tend to avoid a long-outstanding `contingent' interest and thereby effectuate the policy behind the rule against perpetuities * * * it would be far more desirable to expressly make rights of entry and possibilities of reverter subject to the rule against perpetuities rather than accomplish the same result by indirection.'
Where the rule against perpetuities has been applied to possibilities of reverter, it has always been done by legislative action. See, 78 Harv.L.Rev. 973, supra, at 989; Sparks, A Decade of Transition in Future Interests, 45 Va.L.Rev. 339, 362 (1959).
Many legal text writers agree that where the rule against perpetuities has been applied to possibilities of reverter it has always been done by legislative action. It appears illogical to grant this protective status to a possibility of reverter and subject property to a special limitation by some ancient document; however, this is a legislative question. We do not treat this question further because it is not necessary for a decision of this case, but take this method of calling the legislature's attention to this question for possible action by it to subject possibilities of reverter to the rule against perpetuities.
The first two assignments of error will be treated together and may be summarized as follows: did the use of a part of Lot 7 for street widening purposes violate the reverter provision?
The city argues that the street widening improvements were not contrary to or violative of the reverter provisions in the deeds, but to the contrary, are complementary to and auxiliary to the use of the property for public parking purposes. The city relies heavily on Patrick v. Miss. State Highway Commission, 184 So.2d 850 (Miss. 1966) as authority for its position. In 1903 the Antioch Baptist Church received a deed to a parcel of land. The deed contained a provision that if the land ceased to be used for church and graveyard purposes, title would revert to the grantor, his heirs and assigns. In 1961 the church deeded .93 acres of the land to the Highway Commission in order to widen a public highway. In his opinion, the chancellor distinguished the Patrick case and this case as follows:
The contention is made by the defendants that in view of the case of Patrick v. Mississippi State Highway Commission, (184 So.2d 850, 1966), and the fact that the Laurel Urban Renewal Agency had the power of condemnation, that the rules of ordinary title law do not apply. The Patrick case does have essentially the same elements as the case at bar with the exception of the fact that the Laurel Urban Renewal Agency could not exercise the power of eminent domain against *1083 the City of Laurel and the fact that by virtue of the deed of record from the City of Laurel to the Laurel Urban Renewal Agency there was a voluntary abandonment of the property for parking lot purposes by the City of Laurel. In the Patrick case there was no voluntary abandonment but was simply a settlement by the church with the State Highway Commission under the threat of eminent domain by the State Highway Commission. Comparing the position of the church with that of the City of Laurel, both of whom held title to their respective properties subject to a possibility of reverter, the church property, including the possibility of reverter in the Patrick case, could have been condemned under the power of eminent domain by the State Highway Commission, but in the instant case the city voluntarily, by execution of the deed, subjected the property to a different use and the city, as opposed to the church, is not subject to the power of eminent domain except with its voluntary consent. (Miss. Code 1972, Section 43-35-17). Had the City taken no action at all, no use of the property in violation of the condition subsequent could have been made by Laurel Urban Renewal Agency. No threat of eminent domain could have been imposed against the city had the city voluntarily, by execution of a warranty deed, conveyed that property which it held for parking lot purposes only to an urban renewal agency for the purposes of widening a street. Therefore, it is this Court's opinion that the Patrick case would not be applicable to the facts in this case. In addition, it should be pointed out that this is not a suit to cancel the original deeds from the Complainants to the City of Laurel, but is rather a suit by the Complainants to recover the value of the property in question.
It is the Court's opinion that the execution of the warranty deed by the City of Laurel to the Laurel Urban Renewal Agency on December 11, 1973, was a violation of the condition subsequent in each of the deeds and caused the property at that time to revert to the original owners as of December 11, 1973. To hold otherwise would allow the governmental subdivisions to purchase property with extensive restrictions on them validly placed there by the grantors, and subsequent thereto to convey the same to other political subdivisions and effectively negate every restriction or reservation which the grantors originally placed upon the property. Effectively, this would side-step the constitutional requirements in regard to the taking of private property for public use without just compensation. One political subdivision could purchase property from a land owner for very restricted uses and subsequently convey it to another political subdivision and negate every restriction which the land owner originally placed on the property without any compensation whatsoever to the land owner.
We hold this assignment of error is not well taken for the reasons stated by the chancellor in his opinion. The portion of Lot 7 conveyed by the city to LURA reverted to the complainants and they are entitled to damages for the inverse condemnation.
In the third assignment of error the city argues that the chancellor erred in awarding judgment to complainants for damages to the remainder of Lot 7 which was not used for street widening purposes and in awarding damages for improvements on the property used for street widening purposes.
The city conveyed LURA approximately one-half of Lot 7 which was converted from a parking lot to a street with the remaining part of Lot 7 continuing to be used for a parking lot. The chancellor did not include any damages for the value of the fee for the portion of Lot 7 which is presently used as a parking lot. The chancellor held that the execution of the deed by the city to LURA on December 11, 1973 was a violation of the condition subsequent in each of complainants deeds and caused "the property" to revert to the original owners. The opinion does not specify what property was included in the term "the property." In our opinion the term "the property," as used in the opinion, means only the property included *1084 in the deed from the city to LURA. This is consistent with the fact that the chancellor awarded severance damages to the part of Lot 7 retained by the city, which it continued to use for public parking, but did not award any damages for the value of the fee to the part of Lot 7 which was retained by the city.
Complainants did not file a cross appeal so the question of whether Lot 7 in its entirety reverted to them is not before us. The city owns that portion of Lot 7 not included in the deed to LURA subject to the possibility of a reverter to the complainants.
Are complainants entitled to compensation for severance damages to the remainder of Lot 7 now being used by the city for public parking? In Hemphill v. Miss. State Highway Commission, 245 Miss. 33, 145 So.2d 455 (1962) we stated:
A different position is suggested by the Restatement of Property, called the imminency or probability test. The holder of a fee simple defeasible is entitled to the entire award in condemnation if the event on which that estate is to end is not probable within a reasonably short period of time. If on the other hand the stated probability exists, the award is to be shared by the parties proportionately to the value of their two interests.
.....
Courts which have applied the Restatement's probability test recognize the harshness and unreality in many instances of the general rule. They constitute procedents [sic] reflecting a trend away from it. Moreover, there are other soundly reasoned cases, in a minority, holding that a future interest in land which is not tenuous and which is capable of evaluation is a compensable right when taken or damaged by the state for public use. Brugh v. White, 267 Ala. 575, 103 So.2d 800 (1958); Callison v. Wabash Ry. Co, 219 Mo. App. 271, 275 S.W. 965 (1925); ...
.....
We decline to follow the majority rule which denies compensation to owners of all future interests taken by the state. There is no rational basis for such a general doctrine. It is not equitable, and is not consistent with other legal principles related to such existing estates in land. In each case it should be determined whether the particular interest is of a sufficiently substantial character to warrant protection, or whether it is too tenuous for that purpose.
(245 Miss. at 49, 50, 51; 145 So.2d at 462, 463).
In our case part of Lot 7 is being used by the city for public parking, and there is no showing that the city will cease using it for public parking within the foreseeable future. We conclude that the possibility of reverter vested in the complainants to the balance of Lot 7 is not of a sufficiently substantial character to warrant protection. Therefore, complainants are not entitled to recover severance damages to the remainder of Lot 7; neither are they entitled to recover the value of the fee for the remainder of Lot 7.
We therefore reverse the holding of the chancellor that complainants were entitled to severance damages to the remainder of Lot 7. We affirm the allowance of damages as follows:

 1. Fair market value of the
 fee to that portion of Lot 7
 conveyed by the city to LURA ...... $ 14,690
 2. Value of the improvements
 on that portion of Lot 7
 conveyed by the city to LURA ...... $ 1,305
 ________
 TOTAL ............................. $ 15,995

Interest on $15,995 will be allowed from December 11, 1973 until July 1, 1975 at the rate of 6% per annum and at the rate of 8% per annum from July 1, 1975 until paid. We also affirm the allowance of $3,000 attorneys' fees as authorized by section 43-37-9 Mississippi Code Annotated (Supp. 1976) together with interest on $3,000 from the date of the decree, July 1, 1977, until paid.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
*1085 PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] The term determinable fee is sometimes called a base or qualified fee, or a fee simple defeasible. In Bradford v. Federal Land Bank of New Orleans, 338 So.2d 388 (Miss. 1976) we held that where an estate is determined by an event not certain to occur, it is a fee simple defeasible.