374 So.2d 813 (1979)
Margie W. HATHORN et al.
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY et al.
No. 51373.
Supreme Court of Mississippi.
September 5, 1979.
Richard D. Foxworth, Columbia, for appellants.
Ingram & Matthews, Jolly W. Matthews, Zachary & Gillespie, Jere R. Ramsay, George E. Gillespie, Hattiesburg, Sebe Dale, Jr., Columbia, for appellees.
Before ROBERTSON, P.J., and BROOM and COFER, JJ.
*814 COFER, Justice, for the Court:
Appellants Margie W. Hathorn, et al. brought this action in the Chancery Court of Marion County to have themselves determined to be the owners of certain lands and to procure cancellation of all claims thereon as clouds upon their title thereto. Defendants (appellees here) are New Orleans Great Northern Railroad Company (NOGN), Illinois Central Gulf Railroad Company, (ICG), Sidney Kiley Burch and his wife, Mrs. Carolyn Ann Sargent Burch, Foxworth Bank, Sebe Dale, Jr., Foxworth Scrap Yard, Incorporation, and K-Y Timber Company, Incorporated.
On July 30, 1907, Mrs. Missouri Foxworth and others, under whom the considerable cloud of complainants claim as heirs, devisees, or grantees, executed a deed to NOGN and to "its successors and assigns forever," to tracts of land meticulously described therein. The consideration therefor was one dollar "and other considerations," for which consideration, the deed recites that the grantors, "discharge and acquit said New Orleans, Great Northern Railroad Company, its successors and assigns from any and all liability for or on account of the construction maintenance and operation of the railroad thereover, and for using, enjoying and appropriating the land hereby conveyed to all or any such railroad purposes as may be desired forever. Should the New Orleans Great Northern Railroad Company, its successors or assigns abandon the depot that is to be built at this point, the lands described above is (sic) to revert to the Grantors herein."
The deed was filed for record on the 31st day of August, 1907, and recorded on the 13th day of October 1907.
Complainants-appellants alleged themselves to be the true owners of the property; and ICG has asserted a claim thereto by conveying a part thereof to the Burch parties; that the Burch parties claim under that conveyance, and alleged erection of a depot which was abandoned on March 30, 1976, and that, under the 1907 deed, title to the land was reverted to complainants. They alleged that the claims of the defendants are false and spurious, and cast a cloud upon complainants' title. Their prayer was consistent with their allegations.
The defendants denied abandonment of the depot within the meaning of the deed, but also pleaded Mississippi Code Annotated, sections 15-1-7 and 15-1-13 (1972). In addition thereto, the Burch defendants pleaded laches and estoppel.
The facts of the case are complex. Equally complex is the defendant railroads' involvement. The identity of the various activities of these defendants will not be delineated herein, not being necessary to this decision, and they will frequently be referred to as "the railroads."
Clearing a difficult path through the maze of theories, assertions, claims, and defenses advanced by the parties, the chancellor made findings that the 1907 grantors' manifest intention was to obtain railroad services for themselves and for the Foxworth Community, and not merely to have a depot building; that their intention was to reserve to themselves personal right to retake the title to the land, in case of breach of the condition by the grantee, and, therefore, there are no complainants with standing to bring the suit; that the railroads involved, NOGN and ICG, are presently sufficiently complying with the manifest purpose of the 1907 deed, that is, to provide railroad services to the community; alternatively, that NOGN and its successors have fully complied with the manifest purpose and intent of the condition of the 1907 deed for upward of fifty years, and therefore no breach or forfeiture should be held to have taken place; and, further, that this lengthy compliance evidences a "good faith purpose," as might reasonably have been contemplated by the parties to the deed, and to exact a perpetual compliance with the condition would be unjust and inequitable; further that, if in error as to the findings above listed, then that the 1907 deed created a condition subsequent with right to re-enter and not a limitation with automatic re-entry; that abandonment of the depot occurred, if at all, no later than 1965, and that the re-entry statute of limitations, *815 section 15-1-7, bars this action; that, as to the Burch appellees, equitable estoppel barred attack by appellants on the deed to them including part of the lands in the 1907 deed, and finally, that there are no clouds to be cancelled, as fee simple title is vested in its rightful owners, including the Burch appellees. Decree consistent with the chancellor's opinion, was entered.
From the decree denying to them the relief prayed, complainants have appealed, assigning seven errors:
1. The trial court committed manifest error in ruling that the provision in the deed of 1907 is a condition subsequent rather than a possibility of reverter.
2. The trial court committed manifest error in ruling that abandonment of the depot occurred, if at all, not later than 1965 so that this action is barred by Section 15-1-7 of the Mississippi Code of 1972.
3. The trial court committed manifest error in ruling that the intent of the grantors in the 1907 deed was to obtain railroad service for themselves and the community of Foxworth, and in ruling that the New Orleans Great Northern Railroad and the Illinois Central Gulf Railroad are at the present time substantially complying with the manifest purpose and intent of the 1907 deed, i.e., to provide railroad service to the community.
4. The trial court committed manifest error in ruling that the New Orleans Great Northern Railroad Company and its successors have complied with the intent of the condition in the 1907 deed for over fifty years, and that, therefore, no breach or forfeiture should be declared, and further to exact a perpetual compliance would be inequitable and unjust.
5. The trial court committed manifest error in ruling that Sidney Kiley Burch and Carolyn Ann Sargent Burch did all that reasonably prudent individuals could do and that appellants are estopped by misleading silence, passive conduct, and failing to assert any claim on the face of actual and constructive knowledge of great change of position by the Burches.
6. The trial court committed manifest error in ruling that the grantors in the 1907 deed intended to reserve only in themselves the personal right to retake title to the premises in the event of breach of the condition.
7. The trial court committed manifest error in ruling that the complainants' case should be dismissed, and in failing to rule that the provision in the deed of 1907 created a possibility of reverter, and that the subject property reverted to the appellants on March 30, 1976.
Decision of the ultimate issue as to whether appellants are entitled to the relief they prayed, and which the chancery court denied to them, gives rise to a number of questions which we find to be interesting and some of them troublesome.
Was there a depot built and used within the intention of the grantors? Has there been a continued substantial compliance with the provision as to the depot? Does the deed create a limitation, a possibility of reverter, on the title conveyed in the deed? Did the reverter clause give rise to a condition subsequent? Was this condition broken? If so, when? What was the effect of its violation? Does the deed reveal an intention that the reversion was personal to them and would not be available to their heirs and grantees? Did the use of a depot from 1910 to 1964 amount to such a compliance with the depot provision that this use is legally sufficient, leading the court to the conclusion that the defendant railroads were no longer required to comply with the provision?
The parties appear to be in disagreement as to what the 1907 grantors meant by the word "depot." We cannot conclude that Mrs. Missouri Foxworth, along with her cograntors, was concerned with the vanity of having a building erected alongside the railroad, on some of the sides of which building would be printed in bold letters, "Foxworth", giving information to passengers on speeding trains that they were now passing through "Foxworth country." Rather, it was intended that the building would be *816 viable, busily active in taking care of the comfort and convenience of passengers (with waiting rooms, seats, depot stoves, bulletin board, showing scheduled arrival and departure of passenger trains, ticket windows, and ticket agents); freight rooms, mail accommodations, and clicking telegraph instruments receiving and transmitting messages. It was the purpose of the 1907 grantors that trains would stop there, a valuable asset to the Foxworths and the community, which could not be served by trains dashing through the area with no stop at Foxworth.
In Town of Sumner v. Illinois Central Railroad Co., 236 Miss. 342, 111 So.2d 230 (1959), the majority opinion gave attention to what, in service, a depot should be and do. The decision gave attention to what depot service is required under section 187 of the Constitution of 1890. A dissenting opinion, well reasoned, makes note of the changing times as they affect railroads, saying, "We cannot turn back the clock nor prevent the changing conditions." 236 Miss. at 358, 111 So.2d at 237. It also cited Albritton v. Winona, 181 Miss. 75, 178 So. 799 (1938), quoting therefrom, "`Growth is the life of the law, and when it ceases to grow and to keep pace with social and economic needs it becomes a hindrance instead of an aid to the public welfare.'"
Since, as below to be mentioned, the railroads discontinued use of the depot building, after authority granted by the Mississippi Public Service Commission, they have operated such business as is now demanded or convenient in a little building located a few feet south of the old depot, and a customers' service agent goes there daily, except on the weekends, and checks cars, collects bills, bills out cars; they removed the telephone to the small building and maintain a desk (really being a shelf used for a desk), and weigh bill boxes. There are a piggyback track and a pulpwood track, both in substantial use at Foxworth.
Such an operation as is now in use at Foxworth was favorably considered in Citizens of Stringer v. GM&O Railroad Co., 229 Miss. 1, 90 So.2d 25 (1956).
It is regarded as of no moment that the depot contemplated by the deed of 1907 was not located on the land described therein. "At this point" was undoubtedly well understood by the parties. The location of the depot near the land was "at this point." The depot, with the ever shrinking of the railroad's activity, was substantially in use. It was built in 1910, and burned and was rebuilt in 1917, and the Mississippi Public Service Commission authorized effectively its discontinuance in 1963.
Appellees maintain that, in their operation, in the very small one-room structure, near the old depot, they are substantially complying with the depot proviso of the 1907 deed and have steadfastly done so. Having knowledge of the changing times, and the changes in modes of travel, and transportation, and transmission of messages, as we do, we agree with appellees' contention. We are of the view that NOGN, the 1907 grantee, and its successors have continued to comply with the depot requirement. The effect of this conclusion will presently be noticed herein. [The pleading and argument of substantial compliance are viewed as inconsistent with the defense that section 15-1-7 has barred the action. Inconsistent defenses may be, and here have been, pleaded. Board of Supervisors of Stone County v. Bond, 203 So.2d 800, 802 (Miss. 1967).]
The reservation of the reverter was a reservation of an estate and is property. This being true, the estate or property could be disposed of by deed, will, or inheritance. The fact that it was reserved to the grantors without adding such words as "and to their heirs and assigns" or words of similar import, did not make the reservation personal to, nor cause it to expire with the passing of, the grantors. Jones v. Burns, 221 Miss. 833, 74 So.2d 866 (1954).
It is argued that the railroads' long compliance with the depot use provision should suffice to satisfy the requirement without further obedience to it. Appellees point to the benefits they claim the grantors have received from over a half-century of use of *817 the depot. We may not lightly assume that the railroads were not profiting thereby also, and, yet appellants do not say that compliance with the deed of 1907 on their part and the part of their predecessors has been of such duration that the rights of appellees under the deed should now be ended. It was undoubtedly understood and contemplated by the parties in 1907 that the depot use would be for a long period, as it has proved to be. We know of no reason to carve out a statute of limitations of such sort, and, if one were deemed proper, such enactment would be for the Legislature and not this Court.
Under our authorities, the reverter provision is a condition subsequent and requires a re-entry, on breach of the condition. City of Laurel v. Powers, 366 So.2d 1079 (Miss. 1979); Yazoo and Miss. Valley Railroad Co. v. Lakeview Traction Co., 100 Miss. 281, 56 So. 393 (1911).
Returning now to give consideration to the effect of our concurrence that appellees have given continuous substantial compliance with the 1907 deed, it seems elementary, therefore, that there has been no breach of the condition subsequent, and, therefore, title to the land has remained and does remain in the railroads, with the possible exception of the conveyance of part of it to the Burch appellees. The railroads have given appellants no reason to re-enter the land and the re-entry statute, 15-1-7 has not been set in motion. There, likewise, has been no other waiver of it. A part or all of the land might be conveyed, as the part was conveyed to the Burch appellees, but such conveyance would be ineffectual to defeat the reverter rights of the 1907 grantors and their successors.
It is argued that the Burch conveyance may not be attacked because appellants are guilty of equitable estoppel in standing by, silently, while all the activity was going on on the land. It is contended that Staton v. Bryant, 55 Miss. 261 (1877), which, for one hundred two years, has held people to constructive notice of what land records reveal, should, in effect, be overruled, or that owners of recorded titles should do something other than stand on the record in a case such as at bar. That decision held in part:
Equity will not, on the mere ground of silence, relieve one who is perfectly acquainted with his rights, or has the means of becoming so, and yet willfully acts as owner without obtaining the consent of the owner. A party should ordinarily inquire into the title before he undertakes to appropriate property. He whose title is on record has given the notice which all are bound to know and respect. The law does not require more, generally, but the owner must act or speak, if at all, consistently with his recorded title. He must not do or say anything to mislead. There is a wide difference between encouragement and silence. It is only when silence becomes a fraud that it operates as an estoppel.
(55 Miss. at 275).
We recognize the ever-increasing records of land transactions, the growing difficulty of examining titles, and expanding opportunity for costly error in certifying to the status of ownership. We fail to see these conditions as justifying a recession from the Staton pronouncements or overruling the case. We think that it and the principles for which it stands, though originating in antiquity, are as necessary now as in 1877.
The deed to the Burch parties bears date of March 30, 1976, and appears to have been filed for record on the same day. This suit was filed November 12, 1976. The burden of proof was upon those who pleaded equitable estoppel, and we do not find it to have been proved. Rather, the Burch appellees, with record notice of the reverter rights of appellants, bought and encumbered the property. Appellants diligently brought their action, and may not properly be held to have led the Burch appellees into their activities now complained of.
It is our view and decision that the Burch deed and the claims of all defendants, insofar as they exist, upon and against appellants' reversionary interest in all of the land in the 1907 deed are a cloud upon appellants' *818 reversionary interest in the land, and are declared so to be. The deed to the Burch parties and the mortgage which they have put on the land in that deed we hold to be specifically subject to said reverter interest. It is further our view and decision that neither the title to the land nor any part thereof has reverted to appellants, but the land remains subject to the condition subsequent hereinabove recognized as existing.
The chancellor's decision is therefore, affirmed in part, and reversed in part and rendered.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE and BOWLING, JJ., concur.
BROOM, J., took no part.