390 So.2d 588 (1980)
The COLUMBUS & GREENVILLE RAILWAY CO., a Mississippi Corporation; and Loraine Craig, Ann Craig Milner, Mary Norman Craig Brown, and Carol Craig Catlett
v.
The CITY OF GREENWOOD.
No. 52213.
Supreme Court of Mississippi.
November 19, 1980.
Rehearing Denied December 10, 1980.
Arnold F. Gwin, Lott, Sanders & Gwin, Greenwood, Threadgill, Smith, Sanders & Jolly, Columbus, for appellants.
H.D. Brock, W.M. Whittington, Jr., Whittington, Brock, Swayze, Dale & Calhoun, Greenwood, for appellee.
Before PATTERSON, C.J., and WALKER and BROOM, JJ.
*589 BROOM, Justice, for the Court:
Whether a handwritten conveyance containing language "for railway track and depot" purposes vested fee simple title in the railroad or reserved a transferrable, compensable interest in the grantors is the chief issue of this suit appealed from a Special Court of Eminent Domain of LeFlore County, wherein the City of Greenwood condemned 2.58 acres of the disputed land. Defendants to the city's action were the Columbus and Greenville Railway Co. (C&G herein), and Loraine Craig, Ann Craig Milner, Mary Norman Craig Brown, and Carol Craig Catlett (the Craigs herein). The Craigs are successors in interest of the original grantors, L.H. Henry and Dr. James P. Henry, who conveyed the property to the Georgia Pacific Railway Company, C&G's predecessor in title. Dr. Henry subsequently conveyed whatever interest, if any, was reserved (by the Henry deed to Georgia Pacific) to his wife who then devised that interest to the Craigs.
After the city instituted eminent domain proceedings, the parties agreed to an order allowing the city to take the property upon depositing $150,000 with the LeFlore County Circuit Clerk until the money, by court action, would be divided between the Craigs and the C&G. Both the Craigs and the C&G claimed title to the land and therefore entitlement to the $150,000. Trial was first had by the court sitting without a jury pursuant to an agreement of the parties. The court without the jury heard the matter and ruled that the Craigs had a compensable interest but then ordered a jury trial for determination of the respective interests of the parties in the $150,000 held by the clerk of the court. The jury's finding was that the Craigs would be paid $100,000, and C&G would be paid $50,000. From a judgment to that effect, C&G appeals. In pertinent part the deed states:
In consideration of the benefit and advantages to us accruing from the construction of the Georgia Pacific Railway, and further in consideration of the sum of one dollar in hand paid, the receipt whereof is hereby acknowledged, we do hereby grant, bargain, sell, transfer, and convey unto The Georgia Pacific Railway Company (land description). To have and to hold the said strip of land in fee simple, and we do warrant the title to said land against the lawful claims of all persons. Witness our hands and seals, this 11th day of May, 1888. It is distinctly understood that should said tract of land cease to be used for railway track and depot, then and in that case the same shall revert to the heirs of the grantors herein.
 /S/ L.H. Henry
 /S/ Jas. P. Henry.
C&G argues, among other things, that the trial court erred in holding: (1) that C&G did not own said property in fee simple absolute; (2) that the interest of the Craigs was a compensable interest; and (3) that the Craigs' evidence wholly failed to meet the burden of proof that its claimed interest had any value. C&G also contends that the court erred by failing to render the entire $150,000 judgment for C&G on the first trial and in awarding a second trial.
On their cross-appeal, the Craigs argue that the court erred by holding, at the conclusion of the first trial, that the property here being condemned had not ceased to be used for railway track and depot purposes, either in whole or in part, at the time of these eminent domain proceedings. The Craigs also maintain that the court erred in not awarding either all or 95.24% of the eminent domain award to them.

DID THE ORIGINAL DEED TO GEORGIA PACIFIC CONVEY THE TITLE IN FEE SIMPLE ABSOLUTE LEAVING NO TRANSFERRABLE OR COMPENSABLE INTEREST IN THE GRANTORS' SUCCESSORS, THE CRAIGS?
C&G argues that the following underlined controversial language in the original deed:
It is distinctly understood that should said tract of land cease to be used for railway track and depot, then in that case the same shall revert to the heirs of the grantors herein
is void for three reasons:
(1) the said limitation "to the heirs of the grantors herein" attempted to create an *590 executory interest in the heirs of the Henrys, and as such is void under the rule against perpetuities;
(2) that, under the law in Mississippi, a limitation to the heirs of the grantors is void because it cannot presently take effect, i.e., such a limitation can only take effect on the death of the grantors, and, this being so, the courts have held that this cannot be done by deed;
(3) the limitation to the "heirs of the grantors" is an attempted forfeiture provision, and as such is not favored under the law, must be strictly construed against forfeiture and against the grantors, and, in order to be given effect, must be clear and unambiguous.
Presented here is an interesting problem in semantics. C&G contends that the Henrys (original grantors) created an executory interest because they failed to retain a reversionary interest in themselves; they further contend that the executory interest is void under the rule against perpetuities.[1] C&G cites Moynihan's Introduction to the Law of Real Property (1962), at page 96, for the proposition that the possibility of reverter "can exist only in the transferor or his heirs... ." In our view just such an interest resulted from the deed in question. Significantly, the final sentence of the 1888 deed concludes, "... the same shall revert to the heirs of the grantors herein."
St. Regis Pulp & Paper Corp. v. Floyd, 238 So.2d 740, 743 (Miss. 1970) states that reversionary interests are exempt from the rule against perpetuities and quotes Jones v. Burns, 221 Miss. 833, 841, 74 So.2d 866, 868 (1944):
(A) reservation to the grantor or his heirs is a vested interest and is not within the rule against perpetuities. The distinction is shown by this quotation from 41 Am. Jur. 75, 76, 77, Section 31:
"A possibility of reverter which remains in a grantor or his successor in interest, or in a testator's heirs or devisees, where there has been created a fee simple determinable, is not subject to the rule against perpetuities. Thus, a conveyance of land to a school district upon condition that the land be used only for school purposes, the land to revert to the grantor if the district ceases to use the land for school purposes or uses it for any other purpose, does not violate the rule against perpetuities, as the possibility of reverter vests in the grantor, which he may convey and which descends to his heirs or which he may transmit by will. * *"
Writing for the Court in City of Laurel v. Powers, 366 So.2d 1079, 1082 (Miss. 1979), Justice Sugg reiterated the St. Regis ruling:
We have also held that a reservation to the grantor or his heirs is a vested interest and is not within the rule against perpetuities. St. Regis Pulp & Paper Corp. v. Floyd, 238 So.2d 740 (Miss. 1970); Jones v. Burns, supra.
Suppose we apply the rules relied upon by C&G and hold the last clause, the controversial portion, of the 1888 deed is void and that title was taken by Georgia Pacific in fee simple. The result would be that the next day after the deed was executed the railroad could have moved its depot to another place and could have done anything it wanted to do with the lands in question. This would obviously have been a direct contradiction of the clearly expressed intent of the grantors when the deed was executed.
Under the argument of C&G had the words "revert to the heirs of the Grantors" read "revert to the Grantors or their heirs" there would have been no problem. The Craigs rely upon the rule of construction in this jurisdiction that if a deed contains repugnant provisions or void attempted reservations and the intent of the parties to the instrument is plain, then the intent must be given effect. Dale v. Case, 217 Miss. 298, 308, 64 So.2d 344 (1953); Federal Land Bank of New Orleans v. Cooper, 190 Miss. *591 490, 200 So. 729 (1941); Moss v. Jourdan, 129 Miss. 598, 92 So. 689 (1922); Massey v. Whittaker, 126 Miss. 99, 88 So. 518 (1921); Hart v. Gardner, 74 Miss. 153, 20 So. 877 (1896). An excellent discussion of reversionary interests, including "right of entry for condition broken" and "possibility of reverter" is set forth in Hathorn v. Illinois Central Gulf Railroad Company, 374 So.2d 813 (Miss. 1979). Giving effect to the clear and manifest intent of the parties here, we hold that the 1888 deed created a reversionary type interest in the land of such a nature that title would revert to their successors upon happening of the event that the "land cease to be used for railway track and depot... ."
Our holding is consistent with Hart v. Gardner, 74 Miss. 153, 159, 20 So. 877 (1896), quoting from Henderson v. Mack, 82 Ky. 379, 380-1 (1884) from which the following language is excerpted:
The proper end of all rules of construction is to effect the intention of the parties to the instrument; and the intention of the grantor in a deed is to govern, when it can be ascertained, equally as in the case of other instruments. In arriving at it the entire paper must be considered.
Blackstone says that the construction must "be made upon the entire deed, and not merely upon disjointed parts of it."
If clauses are repugnant to each other they must be reconciled if possible; and the intent, and not the words is the principal thing to be regarded.
The technical rules of construction are not to be resorted to when the meaning of the party is plain and obvious. (Noyes & Co. v. Nichols, 28 Vt. 159.)
Significant is the obvious fact that after the subject conveyance was worded and the date was supplied at the end, there was added the words of limitation "It is distinctly understood that should said tract of land cease to be used for railway and track ... revert." This shows that the grantors were not satisfied with their conveyance without it providing that Georgia Pacific (the original grantee) would no longer have a right to the property should it ever cease to be used in connection with railroad operations. Such an emphatic expression of intent cannot be ignored and our decision here gives reasonable and equitable interpretation to the language used. A different result would be reached by following technical rules of construction which would apply except for the clear expression of intent of the original grantors when they added the controversial language to their conveyance after having first written it and dated it.
In Richardson v. Holman, 160 Fla. 65, 33 So.2d 641, 642 (1948), the Florida Supreme Court had before it a deed with similarities to the conveyance before us. The Florida Court stated:
[W]ords or phrases in isolation will not be permitted to defeat the purpose of the grantor when that may be unmistakably gleaned from the four corners of the instrument.
We do not think it essential to the disposition of the question here, to precipitate a discourse in semantics on the difference between a fee simple determinable and estate on condition subsquent [sic], when a possibility of reverter is or is not alienable, or when a fee is qualified, what constitutes a naked possibility, a conditional limitation, or any other uncertain interest in lands. These old common law concepts had much to do with conveyancing in their day, but even in States like Florida, where the common law is in effect except as repealed or substituted by statute, many of them have been obsolete or have been set aside.

DID THE LOWER COURT ERR IN HOLDING THAT THE CONDEMNED PROPERTY HAD NOT CEASED TO BE USED FOR RAILWAY TRACK AND DEPOT?
This is the next issue raised by the Craigs on their cross-appeal.
The lower court found that there had been no abandonment, and such a fact finding cannot be overruled unless contrary to the great weight of the evidence. *592 Shown by the record is the fact that the tracks have been constantly used since the original railroad began to operate on the land. Such use, however, will not continue now that the city has condemned it. The depot building has always been used by the railroad to some degree although only a small portion of the building was used at times in recent years. The depot grounds were always used for parking by railroad employees, for the storage of equipment or for some railroad related purpose. Upon this record, we cannot say that the lower court erred in its refusal to hold that C&G had abandoned the railway track and depot prior to the eminent domain taking.
In Hemphill v. Mississippi State Highway Commission, 245 Miss. 33, 51, 145 So.2d 455, 463 (1962), we stated:
We decline to follow the majority rule which denies compensation to owners of all future interests taken by the state. There is no rational basis for such a general doctrine. It is not equitable, and is not consistent with other legal principles related to such existing estates in land. In each case it should be determined whether the particular interest is of a sufficiently substantial character to warrant protection, or whether it is too tenuous for that purpose.
Justice Ethridge in Hemphill set forth a two-pronged test to be used to determine whether an owner of a future interest should be compensated. The two-pronged test reads:
The owner of a future interest must fulfill two requirements in order to receive compensation: First, he must be the owner of a compensable interest in the condemned property. Appellants meet this test. Second, the interest must be capable of evaluation. See 42 Iowa L.Rev. at 245.
In the case at bar all of the property originally granted to the railroad under the Henry deed was condemned by the City of Greenwood. Applying the two-pronged test enunciated in Hemphill, supra, to the particular facts of this case, we hold that the Craigs have a compensable reversionary interest that is capable of evaluation. Relying on the testimony offered at the second trial, the jury apportioned the condemnation award as follows: $100,000 to the Craigs and $50,000 to C&G. As Justice Ethridge concluded in Hemphill, supra, 245 Miss. at 52, 145 So.2d 455 in reference to Miss. State Highway Comm. v. Madison County, 242 Miss. 471, 135 So.2d 708 (1961):
The jury apparently accepted testimony of an expert appraiser. Although the trier of facts was not obligated to accept that particular evidence, it could weigh that and other testimony in reaching an acceptable conclusion as to the quantum of damages. See also Stoyles, Condemnation of Future Interests, 43 Iowa L.Rev. at 256-257; 5 Powell, Real Property (1962), §§ 665-669.
Here the jury considered the testimony of the witnesses offered by both parties and divided the condemnation award between the parties based upon that testimony. To allow C&G to take the entirety of the $150,000 eminent domain proceeds would be unconscionable and contrary to all rules of fairness.
In this case presenting a most novel set of facts and excellent briefs, we find no reversible error and must affirm.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] The rule means that an interest must vest, if at all, within twenty-one years after a life in being at the time the interest is created. Carter v. Berry, 243 Miss. 321, 136 So.2d 871 (1962).